CHARLES A. KLINCK, Defendant in Error, *vs.* THE CHI-
CAGO CITY RAILWAY COMPANY, Plaintiff in Error.

*Opinion filed February 21, 1914—Rehearing denied April 10, 1914.*

1. STREET RAILWAYS—*what acts create relation of carrier and passenger.* The act of the servants in charge of a street car in bringing it to a stop, or almost to a stop, at a place where it is the custom to receive and discharge passengers, is an implied invitation to persons intending to take passage on the car to board the same, and the act of any such person attempting to board the car is an acceptance of the implied invitation and creates the relation of carrier and passenger, and the carrier cannot escape liability upon the ground that the servants did not know that the implied invitation had been accepted, as it is their duty to know that fact under such circumstances.

2. SAME—*when employee of street railway company is a passenger.* An employee of a street railway company whose contract of employment is for a stipulated sum of money per month and transportation, and who is given a book of car tickets each month entitling him to ride upon the employer's cars, is a passenger when riding upon one of such tickets, under his contract of employment, at a time when he is not under the control of the company nor obliged to perform any service for it; and it makes no difference that he is either going to or returning from his work. (*Illinois Central Railroad Co.* v. *Leiner,* 202 Ill. 624, explained and language limited; *Abend* v. *Terre Haute and Indianapolis Railroad Co.* 111 id. 202, and *Walsh* v. *Cullen,* 235 id. 91, distinguished.)

3. SAME—*when a stipulation releasing carrier from liability is void.* A stipulation contained in a book of street car tickets releasing the street car company from all liability for personal injury received by the person using the tickets while riding thereon is void, where the book is furnished to an employee of the company, under his contract of employment, as part of the consideration for his services

4. SAME—*effect of a provision reserving right to company to recall ticket at any time.* Where a street car company employs a person at a certain wage and transportation, it is the contract of employment and not the provisions printed upon the ticket which must be looked to in determining whether the employee is a passenger for hire; and the fact that the ticket contains a provision that the company may recall or take it up at any time does not show that it is a revocable privilege and therefore a free ticket.

5. SAME—*the fact that a company is not required by law to furnish transportation to employees does not authorize it to stipulate against liability.* The fact that a street car company is not required by law to furnish transportation to its employees does not authorize it, when agreeing to furnish such transportation as part of the consideration for the services of the employee, to stipulate against liability for its negligence.

6. SAME—*when claim that authority of superintendent to make the contract was not shown is without merit.* The claim that the authority of the defendant street car company's superintendent to make the contract of employment relied upon has not been shown is without merit, where the evidence shows that he did, in fact, make the contract, and that the same was ratified by the company by paying the wages and furnishing the transportation agreed upon.

WRIT OF ERROR to the Branch "C" Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding.

SAMUEL S. PAGE, and CHARLES LEROY BROWN, (LEONARD A. BUSBY, of counsel,) for plaintiff in error.

JAMES C. McSHANE, for defendant in error.

Mr. CHIEF JUSTICE COOKE delivered the opinion of the court:

Charles A. Klinck, the defendant in error, while attempting to board a moving street car of the Chicago City Railway Company, the plaintiff in error, which was running north on Cottage Grove avenue, in the city of Chicago, was thrown to the ground and seriously injured. He brought an action on the case in the superior court of Cook county against plaintiff in error to recover damages for the injuries sustained by him. The declaration in the cause consisted of two counts. The first count alleged that on September 29, 1907, Klinck was at or near the intersection of Bowen avenue and Cottage Grove avenue, at about the

place where plaintiff in error was accustomed to receive and discharge passengers, for the purpose of becoming a passenger, for a valuable consideration, upon one of its street cars; that when the car reached the place where Klinck was standing, the plaintiff in error, through its servants in charge of said car, reduced the speed of the car until it was moving not much, if any, faster than a man could walk and apparently for the purpose of receiving the plaintiff as a passenger upon the car; that when the speed of the car was so reduced, Klinck, while exercising due care and caution for his own safety, attempted to board the car in order to become a passenger thereon, and that while he was in the act of boarding the car, but before he had fully and safely boarded the same, the servants of plaintiff in error in charge of the car, although they knew, or by the exercise of due care could have known, that Klinck was in the act of boarding the car, negligently and without warning increased the speed and started the car forward suddenly, and as a result thereof Klinck was thrown violently from the car to the ground and his left foot was run over by the wheels of the car. The second count contained substantially the same allegations as the first, and in addition thereto alleged that prior to the time complained of, plaintiff in error had negligently placed and piled large quantities of stone or gravel immediately alongside its tracks on Cottage Grove avenue near the intersection with Bowen avenue, at about the place where it was accustomed to receive and discharge passengers, and negligently permitted said stone and gravel to be and remain in that place until the time of the injury complained of, and that as a result of so increasing the speed of the car, and because of the presence of the stone or gravel at that place, Klinck was thrown from the car and injured. Plaintiff in error interposed the general issue. A trial before a jury resulted in a verdict finding the plaintiff in error guilty and assessing Klinck's damages at $6500. After overruling motions for

a new trial and in arrest of judgment the court rendered judgment upon the verdict, which judgment has been affirmed by Branch "C" of the Appellate Court for the First District. A writ of *certiorari* having been granted by this court, the record has been brought here for review.

At the time of the accident Klinck was in the employ of plaintiff in error as a night clerk at its car barns at Thirty-ninth street and Wabash avenue and had been so employed for about eight months. He testified that he applied to the superintendent of plaintiff in error's car barns for the position and was employed by the superintendent, who told him that his wages would be $70 per month and that he would get his transportation. A few days later he was given a ticket good for transportation over the lines of the plaintiff in error, which on its face was designated, "Employee's 62-ride monthly ticket.—For personal use of C. A. Klinck," and which on the margin contained the numbers from 1 to 62, inclusive. On the back of this ticket appeared the following among other conditions not necessary to be shown: "In consideration of the issuance of this ticket the person accepting and using it agrees to abide by its conditions and assumes all risk of accident, and expressly agrees that this company shall not be liable, under any circumstances, for any injury to the person or for any loss or injury to the property of the passenger using this ticket. The company reserves the right to recall or take up this ticket at any time." Thereafter, each month during his employment, Klinck received a like ticket for transportation during the month, and when he was injured he had in his possession, and was intending to use for his passage, the ticket which he had received for use during the month of September, 1907. While in the employ of the plaintiff in error Klinck was required to begin work at six o'clock in the evening and to continue at work until about four o'clock in the morning, excepting about half an hour each night which was allowed him for the

purpose of getting a lunch. He usually left the carn barns about half-past ten or eleven o'clock for that purpose. On the night of September 19, 1907, he left the car barns about half-past ten o'clock and went to his home, on Bowen avenue, riding on one of plaintiff in error's street cars and using the ticket above mentioned. After he had eaten his lunch he proceeded to the intersection of Cottage Grove avenue and Bowen avenue for the purpose of returning to his place of employment on one of plaintiff in error's street cars and with the intention of using his employee's ticket for passage. The evidence on his behalf tends to show that while attempting to board the car he was injured in the manner alleged in the declaration and by reason of the negligence therein charged.

The principal questions involved in this case are, first, whether the relation existing between plaintiff in error and Klinck at the time he was injured was that of carrier and passenger or that of master and servant; and second, if Klinck was a passenger, whether the condition indorsed on his ticket purporting to release plaintiff in error from liability for personal injuries is a bar to recovery by him in this action.

As Klinck was standing at a place where plaintiff in error was accustomed to receive and discharge passengers for the purpose of boarding the car, and as the speed of the car was reduced as it approached the place where he was standing, apparently for the purpose of receiving and discharging passengers, the relation of passenger and carrier existed between him and plaintiff in error when he attempted to board the car and was injured, unless the fact that he was an employee of plaintiff in error and was attempting to board the car to be carried to his place of work upon his employee's ticket establishes the relation of master and servant. *Chicago and Eastern Illinois Railroad Co.* v. *Jennings,* 190 Ill. 478; *Marshall* v. *Boston Elevated Railway Co.* 203 Mass. 40.

Regarding the status of one in the employ of a common carrier who is being transported upon the cars of his employer to or from his place of work the authorities are not entirely harmonious. The great weight of authority, however, is to the effect that when the employee, either by virtue of his contract of employment or under a rule or custom of his employer, is accorded the same means and privileges of transportation over the lines of his employer as an ordinary passenger for hire, then, while riding upon his employer's cars at a time when under his contract of employment he is neither under the control of his employer nor obliged to perform any service for him, he is to be regarded as a passenger, and that under such circumstances it is immaterial that the employee be either going to or coming from his place of work.

In *Dickinson* v. *West End Street Railway Co.* 177 Mass. 365, it appeared that the plaintiff was in the employ of the defendant; that the defendant had made a rule permitting its employees in uniform to ride free on its cars at any time, and that while the plaintiff, under this rule, was riding from his place of work to his home for dinner he was injured. Under this state of facts it was held that the plaintiff was a passenger, and in reaching that conclusion it was said: "At the time of the accident he did not stand in the relation of a servant to the defendant. His time was his own, and he owed the defendant no duties until the time arrived for resuming his work. It was no part of his duty to the defendant, as a servant, to take the car on which he was riding and go to a particular place for his dinner. He might go where he pleased and when he pleased during the interval before coming back to his work. * * * His rights were the same as if, after finishing his day's service, he had taken a car in the evening to visit a friend or to do any business of his own." The court considered the case as one within the decision in *Doyle* v. *Fitchburg Railroad Co.* 162 Mass. 66, where an

employee was killed while riding on a train of his employer, and where, in reaching the conclusion that he was a passenger, the court said: "The ticket on which the plaintiff's intestate was riding was not a mere gratuity. It furnished part of the consideration by which he was induced to enter the employment of the defendant. A ticket was given to him each month, and it contained more rides than were necessary in traveling to and from his work. It is expressly conceded that persons holding these tickets could use them for their own private interest or pleasure, and we think the result must be that the plaintiff's intestate held towards the defendant the relation of a passenger at the time when he was injured."

In *McNulty* v. *Pennsylvania Railroad Co.* 182 Pa. 479, an employee was killed in a collision while on one of his employer's cars. He had been employed to work on a bridge under a contract of employment, by the terms of which he was to receive a certain sum per day and the company also agreed to transport him between his home and place of work on its cars. On the day he was killed he had finished his work at the bridge for that day and entered a passenger car of his employer to go to his home, and while on this car the collision occurred. It was held that he was a passenger, and in considering the question the court said: "The conclusively established facts as to the contractual relation of the parties are not susceptible of any other conclusion than that the transportation of plaintiff's husband from and to his home in Bristol was part of the consideration moving from the company to him, and given him, with the $1.20, in payment of a day's wages. That being so, he had virtually paid for his passage home in the car in which he was riding at the time of the collision, and was therefore a passenger, and not an employee, as soon as his day's work was done and he entered the car for the sole purpose of being carried home. * * * In the case at bar the transportation from and to his home to which

the deceased, McNulty, was entitled was not in any sense a service or connected with any service that he was rendering to the defendant company, but it was a service which the latter, by the terms of the contract, was required to render to him. He was under no obligation to ride on the cars, but there was an obligation on the part of the company to afford him an opportunity of doing so if he saw fit to avail himself of it; and when he exercised the right to which he was thus entitled and entered the car for the sole purpose of being transported to Bristol, he was a passenger in the full sense of the word, and not an employee of the defendant."

In *Enos* v. *Rhode Island Suburban Railway Co.* 28 R. I. 291, the plaintiff was employed by the defendant as a flagman at a railroad crossing under a contract to receive for his services each week the sum of eight dollars and fourteen tickets good for transportation on the defendant's road. When injured he was riding from his place of work to his home, having finished his work for the day. In holding that he was a passenger at the time he was injured the court said: "In the case at bar the plaintiff earned fourteen tickets (as well as eight dollars) per week, and the fact that the tickets were purchased by work instead of cash is unimportant. The fact that they were bought and not given to him is important, because such a ticket paid for his passage home in the car in which he was riding at the time of the collision, and the fact that his passage was so paid after his day's work was fully completed made him a passenger after his employment had ceased for that day. He had left Baker's crossing and the flag and lights and other instruments with which he had guarded it, and there was no way in which, during his ride to Lakewood, he could continue his employment of flagman at the crossing they had left. He could not take it or its responsibilities with him, nor was there any way in which

he could render service there while he was traveling away from it."

In *Indianapolis Traction and Terminal Co.* v. *Romans,* 40 Ind. App. 184, an employee, after completing his day's work, was riding from his place of work to his home in accordance with a custom of the traction company to give all employees doing manual labor, tickets entitling them to ride on its cars between their places of work and their homes. Under this state of facts it was held that the employee so riding was a passenger. This case was referred to and the decision and reasoning therein approved by the Supreme Court of Indiana in *Indiana Union Traction Co.* v. *Langley,* 98 N. E. Rep. 728, in which a common laborer was killed while riding from his place of work towards his home on a passenger car of his employer, upon a ticket which had been given to him in accordance with his contract of employment, and it was there said: "While the doctrine of the *Romans case* is not universally recognized in other jurisdictions, the weight of authority, as shown by recent decisions, is to the effect that where a carrier of passengers employs a person and assigns him a place of labor some distance from his home, giving him, in addition to his wages, tickets which entitle him to ride to and from his work, he is, while riding on such tickets, a passenger, and the carrier owes him the duty of carrier to passenger," and a large number of authorities are cited in support of this statement.

In *Hebert* v. *Portland Railroad Co.* 103 Me. 315, the plaintiff was in the employ of the defendant as a "greaser" at Portland but lived at Westbrook. The defendant operated street cars in Westbrook and Portland and between those cities. In addition to his cash wages the company gave him tickets good for passage upon its cars between Westbrook and Portland. While going from his home to his place of work on one of the defendant's cars he was injured. The court held that he was a passenger, and in

this connection said: "In a sense, of course,—in the popular sense of the term,—the plaintiff was in the defendant's employ. There was between them a then existing contract, implied at least, by which he was to render certain services to the company from day to day; but his work,—his then assigned post of duty,—was in Portland, and not in Westbrook, where he boarded the car, nor upon the line of road between his residence and his·place of work. It is to be assumed that he was to report each working day at a given hour at his assigned post of duty in Portland, and that during the working hours of each such day he was under the company's orders within the line of his employment. It is also to be assumed that outside those hours, and while going to and from his work, he was under his own direction. It is not a case where the railroad company directs a servant to proceed on its cars from one place to another in the prosecution of his work, nor is it a case where a servant of a railroad company is riding upon its cars in the prosecution of his work during hours of work. In the case stated the plaintiff selected his own means of transportation. It was no concern of the company how he got to his work, if he got there. In availing himself of the company's railroad to get to his work he was acting in his own interest and of his own volition. He was not working for the company in thus riding on its railroads. The company did not pay him for so riding. He paid the company for his ride. True, the plaintiff paid his fare by a ticket given him by the company for that ride, but he paid for the ticket by his services. It was part of his wages and delivered to him as such. It could make no difference in his status as a passenger whether he paid his fare in cash or in tickets thus earned."

In *Harris* v. *City & E. G. R. R. Co.* 69 W. Va. 65, the railroad company supplied its employees with badges which entitled them to ride on any of its passenger cars at any time. The plaintiff's intestate was employed as an

ash hauler at the defendant's power plant, his working
hours being from eight A. M. to five P. M. One morning
between seven and eight o'clock the deceased was riding,
on his badge, on one of the defendant's passenger cars to
his place of employment when the car on which he was
riding collided with a gravel car and he was killed. It was
held that the deceased was a passenger when he met his
death. In arriving at this conclusion it was said: "The
decisions on the question whether or not, on the state of
facts shown to exist in this case, an employee occupying
the position of deceased at the time he was killed is to be
regarded as a passenger or a fellow-servant are not uni-
form, but according to the great weight of the decisions
he is a passenger and is entitled to all the rights of a pas-
senger for hire. * * * The capacity in which he is to
be regarded depends upon whether or not his duties to his
master required him to ride on the train, and whether or
not the relation of master and servant existed at the mo-
ment of the injury. If his time at the instant of the in-
jury did not belong to the master, and if his contract of
service did not contemplate that he should ride on defend-
ant's cars as a means of furthering his master's business,
then he was not a fellow-servant but a passenger." Re-
ferring to the deceased in that case it was further said:
"The proof shows that he owed service to the master from
eight A. M. to five P. M. His time from five P. M. to
eight A. M. was his own and he could employ it as he
pleased. He was not obliged to ride on defendant's car
to reach his place of labor, but was free to use whatever
means he pleased of getting to the power plant."

In harmony with this line of cases are *Louisville and
Nashville Railroad Co.* v. *Weaver,* 22 Ky. L. 30, *Whitney*
v. *New York, New Haven and Hartford Railroad Co.* 102
Fed. Rep. 850, and *Chattanooga Rapid Transit Co.* v. *Ven-
able,* 105 Tenn. 460.

Most of the cases upon which plaintiff in error relies in support of its contention that the relation of master and servant existed between plaintiff in error and Klinck at the time Klinck was injured are clearly distinguishable from those above noted, although the reasoning in some of them cannot be harmonized with the reasoning which led to the decisions in the cases above mentioned. A pioneer case in the line of decisions cited by plaintiff in error is *Tunney v. Midland Railroad Co.* L. R. 1 C. P. 291; but, as pointed out in *McNulty v. Pennsylvania Railroad Co. supra,* "it was part of Tunney's employment as a laborer, for specific wages, to travel from Birmingham to Derby on a train called the 'pick-up train,' for the purpose of gathering up materials left along the line of the road, and he was required to be ready for the train at Birmingham and start thence on his trip and return there. The case was put distinctly on the ground that it was part of Tunney's contract of service that he was to return each day to Birmingham by the pick-up train, to be ready to start upon his work the next morning."

The principal case relied upon by the plaintiff in error, however, is *Vick v. New York Central and Hudson River Railway Co.* 95 N. Y. 267. In that case it appeared that under his contract of employment the employee who lost his life, and all other employees living in Rochester, were required to ride in a particular car, known as the "shop car," in going to and from their place of work at Buffalo, and that all of them traveled on one pass, which was given to the master mechanic, who accompanied them. While passengers paying fare were also permitted to ride in the shop car, it is obvious that the employees were not afforded the same rights and privileges as passengers for hire, because they were required to ride, as a body of workmen in charge of the master mechanic, upon a particular car, and the individual workmen could ride on no other car in going to and from their work. The decision,

however, was placed on the ground that the employee's transportation was a part of his contract of service; that although he had no particular duty to discharge while riding on the car, yet when he boarded the car his services under his contract commenced, and he was therefore on the car as an employee and not as a passenger. It seems to us that the New York court failed to distinguish between the services due the employer and those due the employee under such a contract of employment. As clearly pointed out in *McNulty* v. *Pennsylvania Railroad Co. supra,* where an employee, under his contract of employment with a common carrier, is entitled to be transported on the cars of his employer to and from his place of work, the transportation is not in any sense a service due the employer, but is a service which the employer, by the terms of the contract, is required to render the employee.

Other cases in which employees were held to be servants while riding on their employers' cars are *Gillshannon* v. *Stony Brook Railroad Corporation,* 10 Cush. 228, in which the employee was riding on a gravel train; *Gilman* v. *Eastern Railroad Corporation,* 10 Allen, 233, in which the employee was riding upon a flat platform-car having no seats, sides or railing; *Kilduff* v. *Boston Elevated Railroad Co.* 195 Mass. 307, in which the employee, with other laborers, was riding home in a special car in which only the laborers who were working on that particular job were allowed to ride and which was furnished for the mutual accommodation of the company and the laborers; *Russell* v. *Hudson River Railroad Co.* 17 N. Y. 134, in which the employee was injured while riding upon a gravel train, his duties being to load and unload gravel which was hauled by the train on which he was riding; *Wright* v. *Northampton & H. Railroad Co.* 122 N. C. 852, in which the employee was riding on an engine drawing flat-cars loaded with logs; and *Iannone* v. *New York, New Haven and Hartford Railroad Co.* 21 R. I. 452, in

which the employer was under no obligation to transport the injured servant, and which in *Enos* v. *Rhode Island Suburban Railway Co. supra,* is distinguished from cases in which the employer is required, by the contract of employment, to furnish transportation to the employee as a part of the consideration for the services rendered by the employee. All of these cases, as well as others of the same nature, cited by plaintiff in error, are clearly distinguishable from the case at bar.

Statements are found in some of our own opinions which lend support to the plaintiff in error's contention. Thus, in *Abend* v. *Terre Haute and Indianapolis Railroad Co.* 111 Ill. 202, appears the statement that "one who is hired by the day, week or year is just as much in his employer's service in going to and from his work as when actually engaged in the work itself." But in that case the servant, with other employees of the railroad company, was ordered to go out on a wrecking train for the purpose of assisting in removing a wreck from the railroad tracks and while riding on the engine of the wrecking train was killed, and it was held that the deceased, though not actually using a hammer or other tool at the moment he was killed, was nevertheless in the employ of the company for the purposes of the business then in hand, and in this connection the language quoted was used; but it must be read in connection with the facts then under consideration, and cannot be regarded as a general rule to be applied in all cases.

Again, in *Illinois Central Railroad Co.* v. *Leiner,* 202 Ill. 624, in discussing the question whether a conductor who was riding to his home in the caboose of a freight train after his own services to his employer had ended for the week was a fellow-servant of those in charge of the freight train, and who was riding thereon by permission of the conductor but in violation of a rule of the company, the following language was used: "Where a person in

the employ of a railroad company travels back and forth from his home to the place where his services to the company are rendered on the cars of the company, and his transportation free of charge constitutes a part of his contract for service, he is while so traveling not a passenger and cannot recover for the injuries received on account of the negligence of the train crew, because he is a fellow-servant of the train crew and assumes all the risks which they assume." The question whether the deceased employee was a passenger while riding in the caboose under the circumstances there disclosed was not involved in the case, but the principal question was whether, assuming that he was a trespasser while riding on the train, the company was liable for his death, and it was held that it was liable even though he was a trespasser, because his death was caused by the reckless and wanton conduct of those in charge of the train. In answer to the contention that as the deceased was in the employ of the railroad company he was, while riding upon one of its cars to his home, a fellow-servant of the employees in charge of the train, it was said that as he was not at the time of the accident engaged in the work of the railroad company but was going home to visit his family after his work for the company had ceased he was not a fellow-servant of those in charge of the train, and in this connection the language above quoted was used, but it was said that the case then under consideration did not come within the rule there laid down, and as illustrative of the class of cases to which the rule is applicable it was said: "A shoveler of snow, while going to his work upon a train engaged in the work of removing snow from the track, was injured by the overturning of the car in which he was riding, through the negligence of the conductor, and in such case might be regarded as a fellow-servant with the conductor of the train crew. But in such case he and the train crew were both engaged in the same work for the company,—the one

in·the work of shoveling snow and the other in the work of removing the snow from the track. So where a laborer, while riding on a gravel train to his place of labor, was injured by a collision caused by the negligence of the company's servants in charge of the train, he was held to be a fellow-servant with the train crew; but in such case he and the train crew were both engaged in a common service in behalf of the company." The language first quoted from the *Leiner case* is too sweeping and general as a rule for determining whether in a given case one is to be regarded as a passenger or as a servant, and must be limited in its application to the class of cases of which illustrations are there given, as shown by that portion of the opinion last quoted.

Plaintiff in error also relies upon the case of *Walsh* v. *Cullen,* 235 Ill. 91, which was a case where one employed as a servant in a hotel was injured while riding on a passenger elevator in the hotel, and it was held that she was not a passenger, because "the proprietor of an elevator does not occupy the position of a carrier of passengers as to his own employees." Such a case, where the employee is on the premises where his services are to be rendered, is in no respects similar to a case where the employee has left the premises where he performs his work, and wholly for his own convenience, and not in furtherance of any duty owing to his employer, is riding upon his employer's cars under a contract or rule by which he is entitled to all the rights and privileges of a passenger for hire. The statement made in the *Walsh case* that "an employee being carried to and from his working place by his employer is not a passenger," must be understood as applying only to such cases as have been herein distinguished from the case at bar. In the case now under consideration the right to transportation on the cars of plaintiff in error was, under the contract of employment, a part of the consideration to which Klinck was entitled for his services. He owed no

duty, as a servant, to plaintiff in error until he reached the car barns, where his work was to be performed. From the time he left his place of work to get his lunch until his return his time was his own, and he could, during the interval, go where he pleased. He was under no obligation to plaintiff in error to go home for his lunch or to ride on its cars in going to and from his work. As an employee he had no duty to perform while riding upon the cars of plaintiff in error. The ticket which he had in his possession permitted him to ride on any of the cars of the plaintiff in error at any time he might desire, which included the right to select the car on which he chose to ride. Under this state of facts Klinck did not sustain towards plaintiff in error the relation of a servant at the time he was injured but was entitled to all the rights of a passenger. The ticket on which Klinck was intending to ride having been given to him, under his contract of employment, as part of the consideration for his services, he was a passenger for hire, and the stipulation on the back of the ticket releasing plaintiff in error from liability for personal injuries was therefore void. In *Dugan* v. *Blue Hill Street Railway Co.* 193 Mass. 431, it was said: "Where a pass is issued as a gratuity, the clause providing that the holder assumes all risks of accidents is binding, (*Quimby* v. *Boston and Maine Railroad Co.* 150 Mass. 365,) but where such a pass is issued to an employee as one of the terms of his employment the clause is not binding.—*Doyle* v. *Fitchburg Railroad Co.* 166 Mass. 492." To the same effect are *Eberts* v. *Detroit, Mt. C. & M. C. Ry. Co.* 151 Mich. 260, *Harris* v. *Puget Sound Electric Railroad Co.* 52 Wash. 289, and *Whitney* v. *New York, New Haven and Hartford Railroad Co. supra.*

Plaintiff in error contends, however, that because the ticket issued to Klinck contained a provision by which the company reserved the right to recall or take up the ticket at any time it was a mere revocable privilege which he did

not hold as a matter of legal right, and that it was therefore a free ticket. The ticket was delivered to Klinck after he had entered into the contract of employment, under the terms of which he was to be given his transportation as a part of the consideration for his services. The ticket did not constitute his contract with the company, but was mere evidence, to be exhibited to the conductors in charge of plaintiff in error's cars, of Klinck's right to be transported on the cars. Had this particular ticket been recalled or taken up, plaintiff in error would not thereby have been discharged of its obligation to furnish Klinck transportation as long as he remained in its service under his contract of employment. We must look to the contract of employment, and not to the provisions indorsed upon the ticket, in determining whether or not Klinck was a passenger for hire.

The additional argument advanced by plaintiff in error that as it was not required by law to furnish Klinck transportation upon its cars as part of the consideration for his services it could contract to transport him upon such terms as it might see fit, and might make, as one of the terms, a stipulation against liability for negligence, is not only answered by the authorities last above cited but is also met by the decisions rendered by us in *Illinois Central Railroad Co. v. Beebe,* 174 Ill. 13, and *Illinois Central Railroad Co. v. Anderson,* 184 id. 294, where, although the carrier was not required by law to do so, it did in each of those cases furnish a drover's pass to the plaintiff, who was shipping stock over its road, and it was held that a stipulation indorsed on the drover's pass releasing the carrier from liability for personal injuries sustained while riding on the pass was void because plaintiff was a passenger for hire.

Plaintiff in error offered the following instruction:

"If plaintiff has failed to prove by a preponderance of all the evidence, under the instructions, that defendant's employees, on the occasion in question, knew that plaintiff

intended to board the car in question and expressly or impliedly accepted him as a passenger, then plaintiff did not, in law, become a passenger upon said car."

The court modified this instruction by adding thereto the following: "and this defendant was obliged only to use reasonable care to avoid injuring the plaintiff." It is contended by plaintiff in error that it was prejudicial error to give this instruction. The instruction, as offered, was clearly wrong. It would have required the plaintiff to prove that the employees in charge of the car knew that he intended to board the car. While it is necessary to prove either an express or implied contract of carriage between the carrier and the alleged passenger, yet the act of the carrier in stopping a street car, or in bringing it almost to a stop, at a place where it is accustomed to receive and discharge passengers, is an implied invitation to persons intending to take passage thereon at that place to board the car, and the act of any such person attempting to board the car is an acceptance of the implied invitation and creates the relation of carrier and passenger. It is the duty of those in charge of the car to know whether or not the implied invitation has been accepted, and the carrier cannot escape liability by showing that its employees in charge of the car did not know that the person who has accepted the implied invitation intended to board the car. The instruction, as modified, was therefore more favorable to plaintiff in error than it was entitled to, and it was not prejudiced by the action of the court in modifying the instruction and giving it as modified.

It is also urged that the court erred in giving to the jury the first instruction offered by the defendant in error. This instruction informed the jury that if they believed that it was one of the "express or implied terms or conditions of plaintiff's contract of employment that defendant should furnish him free transportation upon its cars," etc., then the stipulation releasing plaintiff in error from liabil-

ity for personal injuries was not binding upon defendant in error. The objection made to this instruction is, that it authorized the jury to find that the stipulation was not binding if the jury found that it was one of the implied terms of the contract of employment that plaintiff in error should furnish transportation, and it is insisted that there was no evidence upon which the jury could find any such implied condition. Even if it be true that no such implied condition was shown by the evidence, still plaintiff in error was not prejudiced by the giving of this instruction, because the evidence of defendant in error to the effect that it was one of the express terms of his contract of employment that he should be furnished free transportation was uncontradicted, and the jury, under the evidence, would not have been justified in making a contrary finding. Other objections to this instruction are wholly without merit.

It is finally contended that the court erred in admitting in evidence the statement made by the superintendent of plaintiff in error's car barns, when Klinck was employed, that for his services Klinck would receive $70 per month and his transportation, the contention being, first, that this alleged agreement as to transportation was superseded by the agreement evidenced by the ticket itself; and second, because it was not shown that the superintendent had any authority to bind plaintiff in error by such an agreement. The first of these contentions is answered by what we have already said in this opinion. The second contention is without merit, because it was shown that the superintendent did exercise authority to enter into such contracts of employment for and on behalf of plaintiff in error, and plaintiff in error ratified the contract so made with Klinck by paying him the wages which had been agreed upon and by furnishing him transportation upon its cars.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*