John Garlinski, Administrator of the Estate of Joseph Garlinski, Deceased, Appellee, v. Chicago City Railway Company et al., Trading as Chicago Surface Lines, Appellants.

Gen. No. 33,832.

Opinion filed May 14, 1930. Rehearing denied June 2, 1930.

BROWN, FOX & BLUMBERG, for appellants; FRANK L. KRIETE, JOHN E. KEHOE and CHARLES LEROY BROWN, of counsel.

PHILIP ROSENTHAL, STUART B. KROHN and JACOBSON, MERRICK & LATTER, for appellee; PHILIP ROSENTHAL and STUART B. KROHN, of counsel.

MR. PRESIDING JUSTICE WILSON delivered the opinion of the court.

The plaintiff, John Garlinski, administrator of the estate of Joseph Garlinski, deceased, brought this action in the circuit court of Cook county against the defendants, Chicago City Railway Company, Calumet and South Chicago Railway Company, corporations, and Henry A. Blair and Frederick H. Rawson, as surviving receivers of Chicago Railways Company, a corporation, doing business as Chicago Surface Lines, to recover for the death of Joseph Garlinski, on the ground that the death was caused by the negligence of the defendants. The trial resulted in a verdict and judgment in favor of the plaintiff for $6,000, from

which judgment this appeal has been taken to this court.

The amended declaration originally consisted of six counts, of which the fourth, fifth and sixth were dismissed on motion of plaintiff at the close of plaintiff's case.

The first count of the amended declaration charged that defendants were operating a city railways system along Milwaukee Avenue and that, on the day of the accident, they were running and operating a certain motor car and trailer in a southeasterly direction along said street; that plaintiff's intestate was about to become a passenger, but the defendants so negligently and carelessly operated said car that plaintiff's intestate was thrown upon the ground and killed. The count further alleged that the deceased left him surviving a father, mother and two brothers.

The second count charged that plaintiff's intestate was about to become a passenger on said car and it was the duty of the defendants to give him a reasonable opportunity to board said car in safety, but the defendants carelessly and negligently caused said car to be suddenly started and the door of said car to be suddenly closed while plaintiff's intestate was in the act of boarding said car, so that a portion of his clothing was caught and fastened between the edge of said door and the body of said street car, and he was thrown to the ground and killed.

The third count alleged negligence on the part of the defendants in causing one of their cars to suddenly start forward while plaintiff's intestate was in the act of boarding said car.

The street car in question consisted of a motor and a trailer, each of which was between 48 and 50 feet in length and joined by a coupler bumper. The motorman was stationed on the front of the motor car, which preceded the trailer and there was a conductor upon

the front or motor car and another conductor upon the trailer. Both cars were pay-as-you-enter cars, with folding doors at the front and rear; they were known as "double end" cars; the doors at all four corners of the cars were the same. Each entrance to the platform of the car had two separate doors, one for entering passengers and the other for dismounting passengers. The doors consisted of panels which folded against each other when the door was opened. When the doors were closed, the panels spread out and made a flat surface, and at the same time the step of the car was raised so that it became flush with the closed doors of the car. The doors and the step worked in conjunction by reason of some mechanical operation. This operation, in the case of the trailer, was controlled by the conductor while standing upon the front platform of the trailer, by means of air pressure regulated by a pedal or handle.

The accident to plaintiff's intestate is charged to have occurred while he was in the act of boarding the front platform of the trailer. It appears that these cars were so constructed that, while any one of the doors was open, the electric circuit was disconnected and the cars could not be started. It was, however, possible to disconnect these switches so that the car could be run even though one or more of the doors of the car or trailer were open. There was also on the front platform of the front car occupied by the motorman, a light which indicated when the doors were open and when they were closed.

The accident happened at the intersection of Milwaukee Avenue, North Avenue and Robey Street, three intersecting streets in the City of Chicago. Upon each of these streets was a car line. Stop and go lights were in operation at this point for the purpose of regulating traffic on the three streets. The car and trailer in question was bound in a southeasterly direc-

tion over Milwaukee Avenue and had reached this intersection just prior to the time of the accident. A stop was made at this point for the purpose of permitting passengers to alight from and board said two-car train and, while they were in the act of doing this, the red light came on and it was necessary for said train to remain at that point until it got the signal to go.

The accident in question happened about 7:40 o'clock in the morning of January 22, 1927. There is evidence that there was ice on the street and it also appears that it was a busy street intersection. Many persons alighted from and boarded said train at this point. Those in charge of this two-car train testified on behalf of the defendants, that they did not see plaintiff's intestate, nor witness the accident. The conductor on the trailer said that he could from his position have seen, with the doors closed, any person close to the door at the time the car started, but that he saw no one. The only eye-witnesses to the accident were three men who testified on behalf of the plaintiff.

Roarty, the first witness, testified that he saw Garlinski running along by the side of the car while it was standing still, that he, Roarty, then turned and walked north and heard plaintiff's intestate cry out and saw him in a falling position and that it appeared as if his overcoat was caught on some obstacle on the car.

The two other witnesses, Green and Simpson, were city firemen who were driving in a Dodge sedan in the same direction in which the two-car train was proceeding. They were on the southwest side of Milwaukee Avenue between the trailer and the curb, with the front end of their car about opposite the middle of the trailer. The automible was driven by Simpson and he stopped it at this point while the passengers were boarding and alighting from the street car. The red light was on at the street intersection.

Green testified that he saw the boy trying to get on the front car and that the door was closed; that he

then went to the rear car; that at the time he went to the rear car there were eight or ten people boarding it and the next time he saw plaintiff's intestate the doors were closed and plaintiff's intestate was rolling along under the street car.

Simpson, the driver of the Dodge sedan, testified that at the time of the accident there were quite a few people getting on the car and plaintiff's intestate stepped off of the curb and went toward the rear entrance of the front car and, as he did so, the doors closed and he then went toward the trailer to get on the front entrance; when he got there he had his foot up and at the same time the doors closed and caught his coat in the door and the street car started.

It appears that those in charge of the two-car train were unaware of the accident and it proceeded down Milwaukee Avenue a considerable distance before those in charge of the two-car train were notified that an accident had happened.

Plaintiff's intestate at the time of the accident was 16 years of age and working and there is evidence in the record to the effect that he contributed to the support of his family.

It is strongly urged that the judgment is not supported by any evidence legally tending to prove actionable negligence on the part of the defendants and that the trial court should have directed a verdict. In support of this contention it is insisted that plaintiff's intestate was not a passenger and that, by the closing of the doors, the defendants denied him the right of becoming one, and were legally within their right in so doing.

On the other hand, counsel for the plaintiff insists that plaintiff's intestate presented himself at the place in question for the purpose of becoming a passenger; that the defendants had stopped their cars at that point for the purpose of receiving passengers and, among others, the plaintiff; that it became the duty of

the defendants to exercise reasonable care toward plaintiff's intestate and not to start their car while plaintiff was in the act of boarding it for the purpose of becoming a passenger.

A number of authorities are cited by counsel for defendants to the effect that a carrier is not required to accept as passengers any and every one. We agree that this is a correct rule, but are also of the opinion that, where a person under proper circumstances, presents himself for the purpose of becoming a passenger on a street car, it then becomes the duty of a carrier to give him a reasonable opportunity to safely board the conveyance. Each case depends upon the particular circumstances involved. The rule is well expressed in the opinion of the Supreme Court in the case of *Klinck v. Chicago City Ry. Co.*, 262 Ill. 280. The court in its opinion, said:

"While it is necessary to prove either an express or implied contract of carriage between the carrier and the alleged passenger, yet the act of the carrier in stopping a street car, or in bringing it almost to a stop, at a place where it is accustomed to receive and discharge passengers, is an implied invitation to persons intending to take passage thereon at that place to board the car, and the act of any such person attempting to board the car is an acceptance of the implied invitation and creates the relation of carrier and passenger. It is the duty of those in charge of the car to know whether or not the implied invitation has been accepted, and the carrier cannot escape liability by showing that its employees in charge of the car did not know that the person who has accepted the implied invitation intended to board the car."

Defendants rely upon the case of *Lavander v. Chicago City Ry. Co.* 296 Ill. 284, as distinguishing the rule announced in *Klinck v. Chicago City Ry. Co.*, *supra*. We cannot say, however, but that the rule announced in the *Klinck* case is adhered to in the *Lavan-*

*der* case. In the latter case the court found that there was a sharp conflict in the evidence as to whether or not the plaintiff was at the time of the accident a passenger and held that, under such circumstances, it was improper for the trial court to instruct the jury to the effect that "it is the duty of a street car company to use the highest degree of care and caution consistent with the practical operation of its road and the mode of conveyance adopted, to provide for the safety and security of the plaintiff." No such instruction is involved in the case at bar, nor does the plaintiff take the position that the defendants owed him the highest degree of care consistent with the practical operation of the road, but rather insists that the defendants owed him the duty of giving him a reasonable opportunity to board its train and become a passenger.

The only direct evidence in the case as to the manner in which the accident happened is that of the witness Simpson, to the effect that he saw other passengers boarding the trailer and that plaintiff's intestate was standing by the door with his foot raised and that the doors closed and caught his overcoat. From these facts it could fairly be inferred that plaintiff's intestate was in the act of boarding the car and that the conductor in charge, by the exercise of reasonable care, should have known that fact. Any other theory as to the manner of the accident would have been speculative and argumentative. We believe the evidence of Simpson, standing alone, was sufficient to raise a question of fact which properly presented a matter for consideration by the jury as to whether or not plaintiff's intestate was, in fact, presenting himself in a reasonable manner to the street car company in order to become a passenger on its car. *Rost v. Noble & Co.*, 316 Ill. 357.

If there is any evidence reasonably tending to prove the allegations in the declaration, the trial court

should submit the cause to the jury for its determination. The rule is well stated in the case of *McFarlane v. Chicago City Ry. Co.,* 288 Ill. 476, from which we quote:

"The first point to be considered is whether or not the court erred in refusing to give the peremptory instruction. This raises the question whether there was any evidence which fairly and reasonably tended to show that the injuries received caused the death of Alice McFarlane. Primarily, it is a question for the trial court whether the evidence, with all the legitimate and natural inferences to be drawn therefrom, is sufficient, if credited, to sustain a verdict. On consideration of such a motion the trial court has nothing to do with any question as to the preponderance of the evidence or the credibility of the witnesses or the force to be given to evidence having a tendency merely to impeach the veracity of the witnesses. The only question which the court has to determine is whether there is in the record any evidence which, if true, fairly tends to prove the allegations of the declaration. (*Libby, McNeill & Libby v. Cook,* 222 Ill. 206; *Woodman v. Illinois Trust and Savings Bank,* 211 id. 578.) The question of the weight to be given the testimony is a question for the jury."

From our examination of the declaration in the cause, we are of the opinion that there is sufficient stated to support the verdict. Pleas of the general issue were filed to the declaration and issue joined. No objection was made to the declaration by demurrer or otherwise, nor an opportunity given plaintiff to correct such minor details in the pleading as might have been afforded him if such had been done. There was no such variance as caused defendants any surprise during the course of the trial, by reason of a difference or divergence in the proof from the three counts of the amended declaration, upon which the cause of action was tried. We are of the opinion that the trial

court properly denied defendants' motion for a directed verdict.

Objection is made to the giving of instruction number five on behalf of the plaintff. The instruction reads as follows:

"The Court instructs the jury that while, as a matter of law, the burden of proof is upon the plaintiff and it is for him to prove his case by a preponderance of the evidence, still, if the jury find the evidence in the case, when considered all together, preponderates in his favor, it would be sufficient for the jury to find the issues in his favor."

This instruction was approved in the case of *Chicago City Ry Co. v. Bundy,* 210 Ill. 39. It contained, however, the additional clause, "although but slightly." This last clause which was eliminated from the instruction in this case, was condemned in the case of *Molloy v. Chicago Rapid Transit Co.,* 335 Ill. 164. In the case at bar, this criticism cannot be made of the instruction.

It is insisted that the instruction is bad, in that it does not limit the right of recovery to the negligence charged in the declaration. This was held erroneous in the case of *Molloy v. Chicago Rapid Transit Co., supra;* but, in the case at bar, the jury was instructed on behalf of the defendants, instruction number 8 as follows:

"Before the plaintiff can recover in this case, he must prove by a preponderance of the evidence not only that deceased was injured, but that he was injured through some act or omission, which under the law would constitute negligence on the part of the defendants or their servants in some manner charged in one or more counts of plaintiff's declaration, . . ."

Again in instruction number 15, offered on behalf of defendants, the court instructed the jury as follows:

"The court instructs you that burden of proof is not upon the defendants to show that they are not

guilty of the specific negligence charged in plaintiff's declaration, but the burden is upon the plaintiff to prove that the defendants are guilty of such negligence as so charged in some count of the declaration; and this rule, as to the burden of proof is binding in law and must govern you in deciding this case.''

From these two instructions, it is apparent that the jury were told that their consideration of the question of negligence must be confined to such negligence as was charged in the declaration. Under the circumstances, we are of the opinion that the error, if any, in the giving of plaintiff's instructions was cured by subsequent instructions given on behalf of the defendants.

Objection is made to the giving of instruction number three. This instruction has been approved in the case of *U. S. Brewing Co. Stoltenberg,* 211 Ill. 531, with the exception that, in the case cited, the words, ''persons who saw the occurrence'' are included and evidently by an oversight omitted from the given instruction in the case at bar. The purpose of the instruction, however, was to advise the jury that they might consider circumstantial evidence, and we do not believe they were misled in this regard by the omission of the words quoted.

Instruction number 7, given on behalf of the plaintiff, was approved in the case of *Deming v. City of Chicago,* 321 Ill. 341.

The court gave 8 instructions on behalf of the plaintiff and 14 on behalf of the defendants. There was no error in the giving of instructions such as in our opinion would cause a reversal of the judgment. Neither do we believe that there was material error in the argument of counsel to the jury.

It is insisted that the court erred in its ruling upon certain questions asked by counsel for the defendants on cross-examination of one of plaintiff's witnesses.

It appears that the witness in question testified at the coroner's inquest. Counsel for the defendants sought to interrogate him as to whether or not he made certain statements at that time and in his questions attempted to include only part of the questions and answers given. Upon objection the court required counsel to include the entire question and answer for the benefit of the witness. We can see no error in this. The witness was entitled to the previous question and answer in full. If there was any divergence between the original questions and answers, as given on this trial, it properly presented a matter for argument to the jury. The witness however, was entitled, in all fairness, to have his entire question and answer presented to him for denial or confirmation, rather than an isolated part or portion.

For the reasons stated, we are of the opinion that the judgment of the circuit court should be and it therefore is affirmed.

*Judgment affirmed.*

RYNER and HOLDOM, JJ., concur.