ELEANORA KATAMAY, Plaintiff-Appellee, *v.* CHICAGO TRANSIT AUTHORITY, Defendant-Appellant.

(No. 54530;

First District—June 28, 1971.

*Rehearing denied July 26, 1971.*

George J. Schaller, O. R. Hamlink, James G. O'Donohue, Jerome F. Dixon, and Harry L. Parsons, all of Chicago, for appellant.

Arthur L. Pollman, of Chicago, (Philip J. McGuire, of counsel,) for appellee.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

This was an action to recover damages for personal injuries sustained by plaintiff when the heels of her shoes allegedly caught between the planks of an elevated train platform owned and maintained by defendant, causing her to fall to the platform. The jury returned a verdict for plaintiff in the amount of $27,500 and judgment was entered on the verdict. Defendant appeals.

Plaintiff testified that on February 23, 1964, she entered defendant's elevated train station at Milwaukee and Western Avenues in Chicago and walked up the stairway to the platform to wait for a train for downtown Chicago. She testified that when she reached the platform she assumed a standing position, standing in such a manner as to be comfortable. A few minutes later a train approached and stopped at the platform, and its doors were opened. Plaintiff testified that she waited for a number of people to board the train, that she then made a move to board the train herself, and that she found herself suddenly going through the air and falling to the platform.

Plaintiff testified that as she fell her arms and knees came into contact with the platform and that her head was just inside the train doorway. She noticed as she looked back toward her feet that both her shoes were off and that the heels of both shoes were wedged in the spaces between the wooden planks of the platform. Shortly thereafter a man pulled the shoes out of the spaces and attempted to put them on plaintiff.

Plaintiff testified further that the spaces between the planks of the platform where her heels became wedged were about an inch wide. She stated that she was wearing low-heeled shoes, that the heels were of the smallest type placed on dress shoes at the time, that the heels were about three-fourths of an inch and "flanged out" at the bottom, and that they extended upward to the base of the shoe about one and three-fourths inches. Plaintiff testified that at the time of the accident she weighed about two hundred pounds. She also stated that at the time she attempted to board the train there was no crowding or rushing by those boarding.

Felix Poprocki testified on behalf of the plaintiff that he was a passenger on the train in question and that as the train stopped at the station he noticed plaintiff standing on the platform facing the train. The witness testified that when the train had stopped, plaintiff turned to the right and fell down. He testified that when she fell, her shoes remained where she had been standing and were stuck between the planks of the platform. Mr. Poprocki testified that plaintiff's head was about two feet from the train doorway after she fell.

Joseph Adcock testified for the defendant that he was the train motorman on the day in question. He stated that when he stopped the train at the Milwaukee and Western Avenues station, an unusual length of time elapsed during the boarding period and he looked outside to see what the situation was. He testified that he observed the train conductor, Frank Yapelli, attempting to pick up a woman who was on the platform. The witness left his post and assisted in getting the woman to her feet.

Adcock further testified that there were no broken planks on the platform where the woman was lying and he did not notice any shoes stuck between the boards. He further testified that the woman's head was about four or five feet from the edge of the platform and that no part of her body was near the platform edge.

Frank Yapelli testified for the defendant that he was the conductor on the train in question and that when the train arrived at the Milwaukee and Western Avenues station it stopped and several passengers entered. He stated that a woman "was coming up in a rushing way trying to make the train" and that she collapsed on the platform about six feet away from the train. He stated that there were no broken planks on the platform where she fell. After she fell, the witness attempted to assist her to her feet. The witness testified that the plaintiff's shoe was off her foot, but that it was not wedged between the planks, and he stated that in his estimation she had lost her balance and fell.

Over objection of the defendant the trial court instructed the jury that the defendant was a common carrier and that, in selecting a place for the plaintiff to board its train, defendant was to exercise the highest degree of care as to plaintiff's safety. After judgment was entered on the jury's verdict, the trial court denied defendant's post-trial motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial, and defendant perfected this appeal.

■■ The evidence adduced at trial failed to establish that plaintiff had attained the status of a passenger before she fell, which status would have entitled her to the benefit of the highest degree of care on defendant's part as a common carrier. The evidence showed only that plaintiff's

status when she fell was that akin to a business invitee on the common portion of the defendant's station premises and as such was owed by defendant only the duty of ordinary care for her safety.

The case of *Davis v. South Side Elevated R.R. Co.*, 292 Ill. 378, is dispositive of this question. The Court in *Davis* drew a distinction between the duty of a common carrier in the operation of its conveyances and its duty in the maintenance and construction of its stations and other appurtenances. Plaintiff in *Davis* was descending a flight of stairs from defendant's elevated train station after having alighted from one of defendant's trains when she slipped on a banana peel which was lying on the stairway landing and fell, injuring herself. At trial the jury was instructed that the defendant owed to plaintiff the highest degree of care in the operation of its conveyances and in the management and maintenance of its stations, platforms, and the like, and a judgment for the plaintiff was affirmed by the Appellate Court. On appeal to the Supreme Court, the judgment was reversed, the Court noting that the duty respecting the construction and maintenance of station buildings is not so rigorous as that imposed upon a common carrier with regard to roadbeds, tracks, cars and the like. The Court quoted with approval from Elliott on Railroads, 2nd ed., sec. 1590, at page 381 of the opinion:

> "There is really no valid reason why a railroad company should be held to a higher degree of care in maintaining its station buildings than that to which an individual owner of buildings used for ordinary business purposes is held."

The Court went on to state that the standard of the duty of highest degree of care was applicable to common carriers where passengers are actually being transported or are in the process of actually boarding or alighting from the conveyance.

The *Davis* case was recently followed by this Court in the case of *Darda v. Chicago Transit Authority*, 100 Ill.App.2d 94. Plaintiff in *Darda* was walking on defendant's elevated train platform alongside of a train which she intended to board and which was stopped at the platform, looking through the train's windows in an effort to find a car which had seating available. While so engaged she slipped and fell on wet leaves lying on the platform, injuring herself. This Court held that plaintiff did not enjoy the status of a passenger at the time of the fall and was therefore not entitled to the benefit of the highest degree of care from defendant in the maintenance of its property.

Both the *Davis* case and the *Darda* case go on to hold that where it is not shown that the injured party had the status of a passenger, the common carrier owed only a duty of ordinary care for the safety of that person, and that therefore the injured party was required to prove either

that the common carrier had actual knowledge of the condition causing the injury or that the condition was in existence for such a length of time as to have put the common carrier on constructive notice of its existence. See also *Brown v. Chicago Transit Authority,* 123 Ill.App.2d 145.

■■ In the instant case it is clear from the evidence that plaintiff did not enjoy the status of a passenger at the time that she fell on the platform. The evidence reveals that she was moving to board the train, but that she was not in the process of actually boarding the train. Her own evidence was that after her fall, her head was within the doorway of the train. The evidence of her witness, Poprocki, was that her head was some two feet away from the doorway, and the evidence of the defendant was that her head was from four to six feet away from the doorway. Defendant therefore owed plaintiff the duty of ordinary care in the maintenance and care of its platform, and it was incumbent upon plaintiff to prove that defendant had either actual or constructive notice of the condition which caused her fall.

■■ Plaintiff's evidence further fails to show that the condition of the platform where the heels of her shoes allegedly wedged was in fact a defective condition. There is no evidence that the spaces between the planks were abnormally wide, or the like. The only evidence with regard to the spaces is that they were "about an inch wide." On the entire record plaintiff failed to prove that the defendant was liable for her injuries.

The case of *Garlinski v. Chicago City Ry. Co.,* 257 Ill.App. 414, cited by defendant is not in point. In *Garlinski,* the plaintiff's deceased was in the process of actually boarding the defendant's conveyance: his foot was in a raised position in an effort to step into the car when the doors were closed on his coat and he was dragged to his death. Plaintiff's deceased there had clearly attained the status of a passenger by his act of actually boarding the conveyance when the accident occurred.

The Court in the case of *Van Hoorebecke v. Iowa Illinois Gas and Electric Co.,* 324 Ill.App. 88, cited by plaintiff in support of her contention that she had attained the status of a passenger, distinguished the *Davis* case and held that the plaintiff there, who was injured in a fall on an icy sidewalk while walking to board defendant's conveyance which was stopped for the purpose of boarding the plaintiff at a point other than at its normal (and legal) boarding place, was entitled to recover on the basis that she was a passenger. However, the *Davis* case, at pages 381-382, stated that a common carrier is held to the highest degree of care in respect to the condition and management of its conveyances, because negligence in that respect involves extreme peril to passengers, against which they are unable to protect themselves, and that the common carrier would not act reasonably if it did not exercise greater care in equipping

and running its conveyances than in regard to the condition of its station grounds. To that extent the *Van Hoorebecke* case is inconsistent with the reasoning of the Supreme Court in the *Davis* case. Further, the Court in *Van Hoorebecke* went on to state that if the defendant in the case before it was bound to use only ordinary care, pursuant to the holding in the *Davis* case, the evidence in the case before it presented a question for the jury.

The case of *River v. Atlantic & Pacific Tea Co.*, 31 Ill.App.2d 232, is likewise inapplicable on its facts from the case at bar.

It was error for the trial court to have denied defendant's post-trial motion requesting judgment notwithstanding the verdict. (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494.) For these reasons the judgment is reversed and the cause remanded with directions to enter judgment for the defendant and against the plaintiff notwithstanding the verdict.

Judgment reversed and cause remanded with directions.

LYONS and GOLDBERG, JJ., concur.