GEORGE RADERMACHER v. ST. PAUL CITY RAILWAY COMPANY.[1]

March 12, 1943.

No. 33,334.

[1]Reported in 8 N. W. (2d) 466.

428

*Homer Gannaway,* for relator.
*C. J. Menz* and *A. J. Donnelly,* for respondent.

JULIUS J. OLSON, JUSTICE.

Relator was employed by respondent as a car cleaner at one of its carbarns. His workday began at eight o'clock in the morning and continued until five o'clock in the afternoon with an hour off at noon.

In 1917 respondent commenced the practice of issuing free tickets to its employes entitling them to ride on its passenger cars. Each ticket was treated on the same basis as if the holder were a cash-paying passenger and, as such, entitled him to transfer rights. During the first 30 days of employment two such tickets were issued to the employe each day. Thereafter, if the employment continued, he was given an "employe's ticket book" entitling him to 100 rides, but the right of the ticket holder was expressly limited to his own "personal and exclusive use," and "under no circumstances" was the book to be "loaned to any member of" his "family or friends." New books were issued monthly upon return of the covers of the old or used books. This practice continued and was in force at the time relator sustained an accidental injury for which he is now seeking compensation. He was the holder of such a book at the time of the accident, March 19, 1937, and during his employment had used the tickets in going to and returning from his place of employment. Every employe ticket holder was, however, privileged to use the tickets for any personal transportation of his own choosing, but only upon respondent's publicly used passenger cars.

During the evening of March 18, 1937, relator was requested to report for work an hour earlier the following morning. In conformity with that request and at about 6:15 o'clock on the morning of March 19, while he was standing on the "safety isle" on University avenue in St. Paul, near the intersection of that avenue with Mackubin street, waiting to board a streetcar then approaching at an estimated distance of 75 to 200 feet, he was struck by an

automobile operated by a "hit and run" driver. The individual so causing him injury is unknown. The employer-employe relationship between the parties is not questioned, nor are relator's disabilities resulting from the accident and respondent's due notice of the happening of the accident.

Relator claims that he comes within Minn. St. 1941, § 176.01, subd. 11 (Mason St. 1927, § 4326[j]), which, so far as here material, provides:

"Without otherwise affecting either the meaning or interpretation of the abridged clause 'personal injuries arising out of and in the course of employment,' it is hereby declared:

"Not to cover workmen except while engaged in, on, or about the premises where their services are being performed, or where their services require their presence as a part of such service, at the time of the injury, and during the hours of service as such workmen; *provided, that where the employer regularly furnishes transportation to his employees to or from the place of employment, such employees shall be held to be subject to this chapter while being so transported.*" (Italics supplied.)

The referee awarded compensation, but on appeal to the commission there was a split decision, resulting in a reversal and an order denying compensation. *Certiorari* brings the matter here. The majority thought that "even if it might be conceded *arguendo* that petitioner was being furnished transportation within the meaning of the act," he was not "at the time of his injury * * * 'being so transported.'"

Respondent's contention is that the use of these free tickets by its employes does not bring it within the proviso of the statute which we have cited and italicized. It claims that, even if its position is "not sustained" on that score, the fact remains that "the accident did not occur 'while being so transported,'" and hence that relator's injuries are "not compensable." Respondent does "not dispute the fact that there are cases [referring specifically to Markoff v. Emeralite Surfacing Products Co. 190 Minn. 555,

252 N. W. 439] holding that where the employe is by contract, express or implied, being transported to or from work in a conveyance furnished by the employer and is accidentally injured while being thus transported, and even immediately before boarding and immediately after alighting from such vehicle, [the employe] is entitled to compensation." But its contention is that in no case upon which relator relies "were the facts like those confronting us in this case. In none of them was the employe a common carrier of passengers for hire," nor "was the riding confined to the regular publicly used cars of the employer. In none of them was the transportation furnished for the general and unrestricted use of the employe, and not specifically for transportation to and from work."

University avenue in St. Paul is the principal thoroughfare leading to Minneapolis. Some years prior to the happening of the accident presently involved St. Paul widened and improved that thoroughfare and expended much money to facilitate the safety and speed of vehicular traffic, which had become a municipal problem largely because of ever-increasing automobile traffic. There are three traffic lanes, viz., a center lane, occupied by the streetcar company, with a double set of tracks going in opposite directions, and, on each side thereof, a wide highway for general vehicular traffic. Sidewalks on each side provide for pedestrian traffic. Between the sidewalk and near the respective streetcar tracks, there is a "safety isle," made of cement, about six inches in height and approximately three feet in width, running alongside the track. As the name implies, these were built and are being maintained to promote public safety and convenience. To respondent, these are especially valuable, because they afford a safe place to persons either boarding or alighting from streetcars. The isles are not designed nor used for pedestrian traffic. The sidewalks take care of that. The isles end at street intersections so as not to interfere with traffic using the intersecting streets. At appropriate places respondent has caused "Car Stop" signs to be placed to indicate

to streetcar passengers the proper places for them to board or alight from cars.

▪ The italicized portion of the statute came into our law by L. 1923, c. 300, § 14, an amendment brought about by the decision of this court in Nesbitt v. Twin City F. & F. Co. 145 Minn. 286, 177 N. W. 131, 10 A. L. R. 165, where the holding was against the claimant because, under the restrictive clause of the statute, the liability of the employer was not intended to include workmen injured "except while engaged in, on, or about the premises" of the employer. This was pointed out in Markoff v. Emeralite Surfacing Products Co. 190 Minn. 555, 558, 252 N. W. 439, and again in Gehrke v. Weiss, 204 Minn. 445, 448, 284 N. W. 434. In line with our holdings there, and since the obvious purpose of the amendment was to extend the protection of the compensation law to workmen regularly transported by their employers, it is our duty so to construe its provisions as to make the legislative purpose effective. It should receive such fair and liberal construction "as to make it a workable one, thereby giving force and effect to the legislative purpose." Tomasko v. Cotton, 200 Minn. 69, 77, 273 N. W. 628, 632. It should be "so construed as to give effect to the obvious legislative intent." 6 Dunnell, Dig. & Supp. § 8937.

▪ Upon authority of the Markoff and Gehrke cases and the plain purpose of the amendment, we think there can be no doubt that both parties to this litigation come within its provisions. In the Gehrke case, 204 Minn. 445, 448-449, 284 N. W. 434, 436, we held:

The amendment "does not require a formal contract between employer and employe, nor does it require that the transportation occur 'during the hours of service.' Under workmen's compensation acts not as restrictive as ours, prior to the amendment by L. 1923, c. 300, the courts have held that where transportation was furnished as incidental to the employment the act covered the employe while so transported. [Citing cases.] In the Konopka case [Konopka v. Jackson County Road Comm. 270 Mich. 174, 258 N. W. 429] the court said that where 'incident to the employment

contract it is contemplated and understood by both the employer and the employee that the former will transport the latter to or from the place where the work is done' an accidental injury to the employe while thus transported arises out of and in the course of the employment. We have so held in Wiest v. Bolduc, 178 Minn. 310, 227 N. W. 48; Markoff v. Emeralite Surfacing Products Co. 190 Minn. 555, 252 N. W. 439. * * * The fact that the accident happened after the expiration of the working hours or that Gehrke could have left without going to the camp is of no consequence. He did avail himself of the transportation regularly furnished those who desired the same."

■ Since (204 Minn. 447, 284 N. W. 435) "there need be no formal contract for such transportation," then clearly here, as in that case, "it is enough that the employer regularly furnishes the transportation" and that the employe makes use of it.

Two of the cases upon which the majority of the commission relied were considered by this court in the Gehrke case, namely, Tallon v. Interborough R. T. Co. 232 N. Y. 410, 134 N. E. 327, 21 A. L. R. 1218, and In re Kowalek v. N. Y. Cons. R. Co. 229 N. Y. 489, 128 N. E. 888, and we deliberately chose not to go with the views expressed by the majority of the court in the Tallon case, nor are we now persuaded that we should follow them.

■ We are also of the view that respondent may not draw a line of distinction as to whether the transportation furnished by it to its employes was by a public, as distinguished from a private, conveyance. To the employe here, the transportation was regularly furnished as an incident of his employment. The 100 *free* rides every 30 days was the equivalent in money value to $7.50 per month (six tokens for 45 cents), or $90 per year, a considerable sum for anyone in relator's position, whose weekly wage was only $19.92.

■ We think, too, that respondent's assertion and the commission's finding that these tickets were pure *gratuities* is not borne out by the recited facts. The cases generally hold that "persons

traveling on a drover's pass or shippers of other articles of freight over the carrier's road, news agents, express agents, postal clerks, and *employees of the carrier going to and from work" fall within the category of passengers for hire,* and in such cases "the pass is not a mere gratuity." (Italics supplied.) 10 Am. Jur., Carriers, p. 35, § 968, and cases cited under notes 10 to 16, inclusive.

■ The fact that "a person travels on a free pass granted to him by the carrier" does not make him a mere licensee, "nor will it operate to deprive him of his status as a passenger. A gratuitous passenger, in the absence of any condition or stipulation as to assumption of risk of personal injury, is entitled to the same degree of care as any other passenger; and if he is not guilty of contributory negligence, he may hold the carrier liable for injuries resulting from its negligence or that of its servants." *Id.* p. 34, § 967, and cases under notes 4 and 5.

■ The next problem presented by respondent is whether relator at the time and place of his injury was "being so transported" within the meaning of the statute. In the Markoff case, 190 Minn. 555, 252 N. W. 439, the employe, after leaving the truck which was regularly furnished by his employer to transport employes to and from the place of work, was injured by a passing automobile while crossing a highway to reach a path leading to his home. Compensation was awarded by the commission, and we sustained the award upon the theory that, under the statute as amended (190 Minn. 558, 252 N. W. 440): "The situation now is no different where the injury occurs during transportation furnished by the employer as an incident to the employment than where an injury occurs on the employer's premises, or at a place where the employe's services require his presence." There, as here, the question was whether "Markoff's injury arose out of and in the course of his employment." We held that at the time and place of his injury he (190 Minn. 561, 252 N. W. 441) "was being 'so transported,'" and cited cases from other jurisdictions which we thought sustained that view. In principle there can be no distinction between the employe who has left the vehicle, as had

Markoff, and relator, who was about to enter it. Both are mere incidents of the transportation.

■ If this were an ordinary negligence case founded upon a passenger-carrier relationship between the parties, there is little doubt that the triers of fact could find that relator, waiting to board respondent's car then near at hand, at a place designated by it for that purpose, was, at the moment of his injury, a passenger.

Generally, the cases hold that "an intending passenger [on a streetcar] becomes such when in good faith intending to take passage thereon, he places himself at a usual stopping place and, either by his position or in some other recognized manner, signals the car to stop, and the signal is responded to by the checking of the car." 10 Am. Jur., Carriers, p. 33, § 964. The following cases, amongst others, cited by the author of the text, are especially helpful: Karr v. Milwaukee L. H. & T. Co. 132 Wis. 662, 113 N. W. 62, 13 L.R.A.(N.S.) 283, 122 A. S. R. 1017; Virginia Ry. & P. Co. v. Dressler, 132 Va. 342, 111 S. E. 243, 22 A. L. R. 301; and Klinck v. Chicago City Ry. Co. 262 Ill. 280, 104 N. E. 669, 52 L.R.A.(N.S.) 70, Ann. Cas. 1915B, 177. And our own cases sustain the text. Thus, in Mardorf v. Duluth-Superior Transit Co. 199 Minn. 325, 326, 271 N. W. 588, 589, the trial court had instructed the jury that if the motorman "knew, or by the exercise of ordinary care, should have known that prospective passengers * * * were proceeding forward to board the streetcar as passengers, it was the duty of the motorman to exercise the highest degree of care, consistent with the proper conduct of defendant's business and the operation of the streetcar." So assuming the fact to be, we concluded that "plaintiff was to be considered as standing in the same relation to defendant as a passenger actually aboard the streetcar." In support thereof we cited Smith v. St. Paul City Ry. Co. 32 Minn. 1, 18 N. W. 827, 50 Am. R. 550, and Richey v. Minneapolis St. Ry. Co. 135 Minn. 54, 160 N. W. 188.

■ Of course, there is no negligence on respondent's part or contributory negligence on relator's part involved in this case. Neither element is involved in a compensation case. But we think

there can be little doubt that relator's position was that of a passenger for hire as and when the injury occurred.

The order is reversed with directions to grant compensation. Relator will be allowed $100 attorney's fees plus statutory costs and disbursements.

