PATRICK A. HUGHES v. DULUTH-SUPERIOR
TRANSIT COMPANY AND ANOTHER.

78 N. W. (2d) 56.

July 27, 1956—No. 36,824.

*T. J. Doyle* and *Leo M. McDonnell,* for relator.
*Dancer, Montague, Applequist, Lyons, Nolan & Nordine,* for respondents.

MURPHY, JUSTICE.

Certiorari to review a decision of the Industrial Commission denying workmen's compensation to employee for injuries sustained in an automobile accident while he was driving home in his own car from his work as bus driver for employer, Duluth-Superior Transit Company.

At the time of the accident involved in this action the employee, Patrick A. Hughes, was employed by the Duluth-Superior Transit Company as an operator of one of its buses. Since the accident occurred after Hughes had completed his work for the day and

was on his way home in his own automobile, we are confronted with the question of whether under the circumstances the travel in which he was engaged was incidental to his employment and whether the transportation was regularly furnished by his employer within the meaning of M. S. A. 1949, § 176.01, subd. 11.

The union of which the employee was a member had negotiated sometime prior to the injury a contract with the employer, the applicable portion of which provides as follows:

"All runs which pull out and end with a relief and all runs which start with a relief and end by pulling in, will be allowed running time one way between the station and all relief points * * *."

The foregoing agreement applied to work schedules where the employee would either begin or end work at a relief point. Relief points are outlying locations, away from the garage, where the employee takes over the bus from another driver who has completed his shift. Where such a schedule is followed the employee receives, in addition to his regular salary, compensation for an additional 40 minutes' time. It appears from the record that 10 minutes is considered as the time required for an employee to report on his day's receipts. The remaining 30 minutes is allotted to provide for traveltime either from the garage to the relief point or from the relief point to the garage depending upon the schedule in effect. The provision for traveltime did not apply where the employee began and ended work at the garage.

The schedule in effect at the time in question provided that on Monday the employee would begin his run from the garage and end by returning to the garage. On this day it was the employee's practice to drive his private car from his home to the garage and leave it there until he completed his daily work. On Tuesday through Friday he would drive his car to the garage where he would leave it and board a transit bus which would carry him as a passenger to 45th Avenue East and Superior Street where he would take over in relief from another driver and begin his daily run. On these days he would finish his run by pulling into the garage from where he would drive home in his automobile. This Tuesday through Friday

practice of beginning away from the station and ending up at the garage was known as "start[ing] with a relief and end[ing] by pulling in." For this sequence of events the written contract provided that traveltime would be allowed the employee to cover the time consumed in going from the garage to the relief point where the run began. A similar provision covered the situation where the driver began at the garage and ended at a relief station under which the driver would be compensated for the period of travel. Since Hughes both began and ended his Monday run at the garage he received no traveltime for that day but on Tuesday through Friday he received traveltime each day because he started with a relief and ended at the garage.

On Saturdays and Sundays, however, he followed a different practice. On those days he drove his car from home to the relief point at 45th Avenue East and Superior Street where he parked his car for the day. He began and ended his run there after which he drove his car home. The written contract made no provision for any specific traveltime when a run began and ended at a relief point, but the employer here paid one-way traveltime nonetheless.

The employee asserts that the Industrial Commission erred in denying compensation because it made its determination on the basis of the written contract alone; he contends that because the written contract makes no provision covering the instant situation, where the employment began and ended with relief, the case should be decided upon the basis of an implied contract. Since he was paid traveltime, he asserts under the rule in Radermacher v. St. Paul City Ry. Co. 214 Minn. 427, 432, 8 N. W. (2d) 466, 469, 145 A. L. R. 1027, 1031, that to be entitled to compensation it is not necessary that the transportation occur "during the hours of service" and that the transportation provided for here was furnished as incidental to the employment so as to cover the employee while engaged in such travel.

Section 176.01, subd. 11, insofar as here material provides as follows:

"Without otherwise affecting either the meaning or interpretation of the abridged clause 'personal injuries arising out of and in the course of employment,' it is hereby declared:

"Not to cover workmen except while engaged in, on, or about the premises where their services are being performed, or where their services require their presence as a part of such service, at the time of the injury, and during the hours of service as such workmen; *provided, that where the employer regularly furnishes transportation to his employees to or from the place of employment, such employees shall be held to be subject to this chapter while being so transported,* \* \* \*." (Italics supplied.)

The italicized portion of the above statute was added by L. 1923, c. 300, § 14, so as to temper the holding of Nesbitt v. Twin City Forge & Foundry Co. 145 Minn. 286, 177 N. W. 131, 10 A. L. R. 165, which construed the more restrictive clause of the former statute which then provided that to be compensable the injury had to occur while the employee was "engaged in, on, or about the premises \* \* \*."[1]

On the day in question the time for which the employee was paid terminated at 7:02 p. m. He testified that he pulled into the relief point at about 6:40 or 6:45 p. m. at which time the relief driver took over from him. He testified that he had a chat with the driver and "turned in my stuff and he took my stuff," apparently referring to his receipts and records. He said, "There is nothing compulsory about it, just a matter of a kindly gesture on his part to take it to the station for me, and then I got in my own car and left." While he was on his way home at about 6:56 p. m. the accident occurred. Although the traveltime was not utilized by the employee in returning to the garage, he contends nevertheless that at the time of the accident he was engaged in a regularly paid transportation from his place of employment to his home. In support of this claim he points out that his home is a distance of 15 or 20 minutes by car from the

[1]See, Radermacher v. St. Paul City Ry. Co. 214 Minn. 427, 432, 8 N. W. (2d) 466, 469; Markoff v. Emeralite Surfacing Products Co. 190 Minn. 555, 557, 252 N. W. 439, 440.

relief station and that the 40 minutes' traveltime represents time consumed in going home from work and back again.

The difficulty with this argument is that there is no evidence of any agreement that the employee would be paid for traveling from home to a relief point or from a relief point to home. It clearly appears from the practice carried out under the terms of the express contract, as indicated by the testimony at the hearing, that the company paid traveltime so as to compensate the employees for the time required to travel from the garage to the relief point or from the relief point to the garage. The fact that Hughes received no traveltime on Monday when he began and ended his work at the garage further illustrates there was no agreement that the employees were to be paid to travel from home to work or from work to home, certainly insofar as the express contract was concerned.

Nor is there any indication of an implied contract to pay traveltime from the employee's home to his place of employment or from the place of employment to his home when he began and ended work with a relief. If, by the accepted practice of the employer, Hughes was excused from the requirement of reporting back to the garage and permitted to go directly home, it does not follow that the purpose for the traveltime had changed so as to make travel from work to home an incident of his employment.

The employee principally relies upon Locke v. County of Steele, 223 Minn. 464, 27 N. W. (2d) 285, where an employee was injured during lunch hour on her return from home to her place of employment. It appeared that as an incident of her duties she was required to pick up the mail at the post office on her return from lunch. The claim was allowed on the ground that when she left home after lunch and proceeded to the post office she had resumed her services and was acting for her employer at the time of the accident. There the court said (223 Minn. 469, 27 N. W. [2d] 288):

"* * * The true test in determining employe's coverage under the act was not the route she happened to be following at the time of her injury, but her presence *at a place where,* and *during the time when,*

her services were required to be performed under her employment contract."

There is no claim in the instant case that Hughes was performing any service for the employer at the time of the accident.[2] Nehring v. Minnesota Min. & Mfg. Co. 193 Minn. 169, 258 N. W. 307, also cited by the relator as supporting his position, is clearly distinguishable as the holding in that case rested upon the emergency-call exception to the "coming and going" rule.

The cases of Livingston v. State Industrial Acc. Comm. 200 Ore. 468, 266 P. (2d) 684; Serrano v. Industrial Comm. 75 Ariz. 326, 256 P. (2d) 709; and Kobe v. Industrial Acc. Comm. 35 Cal. (2d) 33, 215 P. (2d) 736, would be helpful to employee were it possible to show in the instant case that he was in fact being paid to drive to work or from work generally rather than just for the trip from the garage to the relief point or the return. In both the Serrano and Kobe cases, the claimant was being paid traveltime from living quarters to work, in general, and the accident occurred while the employee was proceeding between those two points. In the Livingston case, the employer paid the employees 15 minutes' traveltime to a campsite, provided by the employer, from a dam project, and, as is the case here, the employer furnished transportation which the employees could use if they wished but they were not required to do so. There, compensation was granted, but the employee when killed was proceeding between the points for which the traveltime was allowed. Had the employee been bound for some place other than the camp, we cannot assume the court would have reached a like result.

From an examination of the record it does not appear there was an agreement, express or implied, by which the employer regularly furnished transportation to or from the employee's home and place of employment. On the contrary, there is sufficient evidence to support the finding of the Industrial Commission that the employee was paid traveltime between the garage and the relief point or return and that the injury sustained by the employee did not occur

[2]See, Riesenfeld & Maxwell, Modern Social Legislation, p. 242.

during such travel nor was he in the performance of any act incidental to his employment at the time of his injury.

Affirmed.

