Vinita Daniels RENEAU, Sally Daniels, Shirley Daniels, Sharon Daniels, and Henry Daniels, Respondents,

v.

BALES ELECTRIC COMPANY, Employer, and Manufacturers Casualty Insurance Company, Insurer, Appellants.

No. 45584.

Supreme Court of Missouri, Division No. 2.

June 10, 1957.

Robert S. McKenzie, Stubbs, McKenzie, Williams & Merrick, Kansas City, for appellants.

David H. Clark, Kansas City, Thomas G. Woosley, Versailles, for respondents, Sebree, Shook, Hardy & Ottman, Kansas City, of counsel.

BARRETT, Commissioner.

The Bales Electric Company of Pittsburg, Kansas, had the contract for the electrical work at the Sedalia Air Force Base three miles south of Knobnoster in Johnson County, Missouri. The company entered into a contract with Local Union 124 of Kansas City, International Brotherhood of Electrical Workers, in which the union agreed to furnish the company all necessary electrical workers. One of the electrical workers furnished was Harry M. Daniels who lived at Versailles, Morgan County, Missouri, seventy miles from the job site. Harry traveled to and from work on a motorcycle, and on June 19, 1953, at approximately seven o'clock in the morning was on his way to work when his motorcycle was involved in a collision with an automobile. The collision occurred near Stover in Morgan County, nine miles from Versailles and fifty-eight miles from the job site. Harry died as the result of injuries received in the collision and his wife, Vinita, and their four minor children, Sally, aged nine years, Shirley, aged seven years, Sharon, aged six years, and Henry, aged five years, filed a claim for the death benefits provided by the Workmen's Compensation Law. V.A. M.S. § 287.240. Bales Electric Company, Harry's employer, and Harry, as Bales' employee, admittedly were operating under and subject to the provisions of the Missouri Workmen's Compensation Act. Because the accident and Harry's resulting death occurred while he was on his way to work the company and its insurer denied all liability for the claim. The claim was. submitted to a referee of the Division of Workmen's Compensation and to the Industrial Commission upon review on an agreed statement of facts. Under the agreed facts the referee and the commission found that Harry sustained an accident and died as the result of an accident arising out of and in the course of his employment and accordingly made an award of $400 reimbursing the widow, Vinita, for burial expenses, and an award of $12,-

000 for death benefits, $30 a week payable for 400 weeks.

■ The company and its insurer have appealed from a judgment of the Circuit Court of Morgan County affirming the award and insist here, as they did before the commission and the circuit court, that the accident did not arise out of and in the course of the employment and if it did that the commission, even though Vinita was again married on August 6, 1955, erroneously awarded all of the death benefits to the four minor children, thus depriving the company and its insurer of their right to subrogation in $4,400 which Vinita recovered against Elroy Young for Harry's wrongful death. It is also claimed that the commission was in error in reimbursing Vinita for the $400 burial expense, but the appellants have not seen fit to brief this question, hence they are deemed to have abandoned it and only the two questions will be considered. Petty v. Kansas City Public Service Co., 355 Mo. 824, 198 S.W.2d 684.

■ Obviously, the defense that the claim was in no event compensable is based upon the fact that the accident and resulting death occurred while the employee was on his way to work and therefore falls within the general rule that injuries sustained in going to and from work do not arise out of and in the course of the employment within the meaning of the Workmen's Compensation Law. Annotation 87 A.L.R. 250. It is also urged that the circumstances of this claim do not fall within any of the recognized exceptions to this general rule. Harry was paid an hourly wage of $2.80 and his regular working hours were 8:00 a. m. to 4:30 p. m., less one half hour for lunch, and so the accident and death did not occur during regular working hours and was not covered by that part of the union contract which provided that the employer should furnish transportation from "shop to job, job to job * * * during regular working hours." But in this case the union contract with the employer contained this provision: "It is mutually agreed that a traveling expense of $3.00 per day shall be paid on all work performed at the Sedalia Air Force Base project, Missouri, which is approximately seventy miles from Kansas City, Missouri. This is to be paid in lieu of any traveling or mileage or any other expense in connection with the Sedalia Air Base project * * *." And in accordance with this provision it was stipulated that in addition to his hourly wage Harry was paid $3.00 per day travel expenses as were all union employees on this project regardless of the distance the employee lived from the job site. There is no objection to the fact that Harry was riding a motorcycle or that he furnished it (annotations 85 A.L.R. 978; 96 A.L.R. 467); the objection and claim is that the employer was obligated in any event to pay the $3.00 wherever the employee lived and had no right to choose the method of transportation, in short, had no control over or right to control the means of transportation. It is urged here that "the employer bargained away his responsibility by increasing the employee's wages by payment of an additional $3.00 per day," and having no control over the expenditure was not responsible for the hazard of highway travel.

The difficulty with the appellants' argument is that the plain implication of the cases upon which they rely is directly contrary to their position here. In Voehl v. Indemnity Insurance Co., 288 U.S. 162, 53 S.Ct. 380, 382, 77 L.Ed. 676, the employee of an electrical supply company was paid an hourly wage "with an allowance for his transportation," five cents a mile and 75 cents an hour from the time he left home for working on Sundays. There is the distinction of the hourly wage from the time the employee left home, but Chief Justice Hughes pointed out that the agreement between the parties modified the general rule of nonliability for injuries sustained while traveling to and from work and caused the service to begin earlier and

elsewhere than at the job site and during regular hours. The important thing is that when there is such an agreement "the hazards of the journey may properly be regarded as hazards of the service and hence within the purview of the Compensation Act." See also in this latter connection the opinion of Mr. Justice Cardozo in Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181. In any event, Cardillo v. Liberty Mutual Ins. Co., 330 U.S. 469, 67 S.Ct. 801, 809, 91 L.Ed. 1028, involved an electrician who lived in the District of Columbia and was employed under a union contract by E. C. Ernst, Inc., at the Quantico Marine Base. There employees who were paid $2.00 a day in lieu of the employer's furnishing transportation formed a "car pool." The employee, Cardillo, was killed when a passing truck flipped a large rock through the windshield and it was held that a claim for his death was compensable. The contract provided that transportation should be furnished for all work outside the District of Columbia and the court held that the employer performed that part of his obligation by paying the $2 daily transportation cost, but the court said, "In other words, where the employer has promised to provide transportation to and from work, the compensability of the injury is in no way dependent upon the method of travel which is employed." The appellants point to the fact that this case and Ward .v. Cardillo, 77 U.S.App.D.C. 343, 135 F.2d 260, 262, in applying the Voehl case, recognize four exceptions to the general rule of nonliability for injuries sustained en route to and from work and urge that this case does not fall with any of the exceptions, particularly exception two "where the employer contracts to and does furnish transportation to and from work." It is in this connection that emphasis is placed upon the employer's lack of control of the means of transportation and Daniels' election to use a motorcycle.

But, Pribyl v. Standard Electric Co., 246 Iowa 333, 67 N.W.2d 438; 440, also relied upon by the appellants, was an electrical union contract which provided that the employer should furnish transportation. Instead of furnishing transportation, however, the employer and the union agreed that employees "would receive 8 cents a mile for the 54-mile's round trip in lieu of being actually transported by the employer in vehicles provided by him for that purpose." An electrical worker was killed while driving his own car to work and it was held that the death arose out of and in the course of his employment and was compensable. In MacClelland v. Dodge Bros., 233 App.Div. 504, 253 N.Y.S. 773, the employee lived twenty-two miles from his place of work and traveled on his own time and expense the first ten miles on his motorcycle; for the last twelve miles he was paid, under a union contract, five cents a mile for the use of his motorcycle. When the employee was injured, in the twelve-mile zone, in a collision with an automobile as he was returning home it was held that the parties had positively or inferentially stipulated that the employment should continue after the regular hours of work and that the claim was compensable. In Serrano v. Industrial Commission, 75 Ariz. 326, 256 P.2d 709, 710, employees on the Davis Dam project were paid $1.77 "as an allowance for travel and subsistence expense * * * an amount equal to one hour's pay" for the fifty-four mile trip from Kingman to the dam site. Serrano went to sleep and was killed when his truck ran off of the highway on the way to Kingman after a day's work. It was held that it was necessary for the employee to travel to and from Kingman "which was certainly incidental to the work done on the job. His travel between Kingman and the Dam did not only fall within the category of what he may reasonably do but it was as much a part of his employment as the actual work on the job. It was within the time, the place and the circumstances of his employment, and the cause producing the accident had its source within the employment and in a risk in-

herent therein, to wit, the hazard of traveling to and from his job to the only available living accommodations." In Livingston v. State Industrial Acc. Comm., 200 Or. 468, 266 P.2d 684, 686, the employer paid for fifteen minutes travel time from its· job site to the site of its camp. In the fifteen minute travel time an employee was killed and the court said, "We hold that if an employer pays for the employe's time during his travel from the job site to his home, the relationship of employer and employee continues during that period of time, and an injury occurring during the course and, in particular, the time of such travel from accidental causes, arises out of and in the course of the employment, and is compensable."

■ While the commission found that the particular trip was not connected with the employee's work, the St. Louis Court of Appeals has recognized the rule: "If the right to transportation, or the right to reimbursement for the expense of the operation of the employee's own car, is given the employee by the terms of his contract, and his injury is received in connection with such transportation, then his injury is by accident arising out of and in the course of his employment, and is therefore compensable under the act." Garbo v. P. M. Bruner Granitoid Co., Mo.App., 249 S.W.2d 477, 478, 480. Hughes v. Duluth-Superior Transit Co., 248 Minn. 81, 78 N.W.2d 56, 57, indicates the limitations on the rule or the exception to the general rule. There the union contract required that relief drivers be paid "running time one way between the station and all relief points." So, when the driver was injured on the way home in his own automobile it was held that his injury was not compensable. Professor Larson has suggested, in connection with travel which has been made a part of the employment that there is some difference, at least in certain situations, in payment for time of travel and payment for expense of travel. He says in the latter cases, however, where transportation is singled out for special consid-

eration by the parties, because of the long distance to be traveled, that the employment should be deemed to include travel, travel in such cases being a substantial part of the service to be performed. 1 Larson, Workmen's Compensation Law, Secs. 16.20, 16.30. In all these cases there is an inadequate number of workmen in the area of the project and the hours or work and inadequate transportation facilities all combine "to make it essential, as a practical matter, that the employer furnish transportation in some manner if employees were to be obtained for the job." Cardillo v. Liberty Mutual Ins. Co., supra. All in all, it may not be said as a matter of law, in the stipulated facts of this case, that Harry's accidental death did not arise out of and in the course of his employment within the meaning of the Workmen's Compensation Act.

The second question involved upon this appeal arises in this chronological sequence of stipulated events: The employee, Harry, died June 19, 1953. On June 10, 1954, almost one year after Harry's death, his wife, Vinita, and his four minor children, Sally, Shirley, Sharon, and Henry Mark, joined in filing a claim for the death benefits provided by the compensation law. It was stated in the claim that each of the claimants was a total dependent. On June 22, 1953, Cora Dell Daniels was appointed guardian of the persons and curatrix of the estates of the four minor children by the Probate Court of Morgan County. Within six months of Harry's death, his wife, Vinita, instituted an action against Elroy Young to recover damages for his wrongful death. That action was compromised on December 9, 1953, and Vinita received $4,400 for Harry's wrongful death and, in her capacity as administratrix, $600 for the destruction of his motorcycle. On August 6, 1955, Vinita was married to Willard Reneau in Kansas City. A referee of the Division of Workmen's Compensation made an award in the compensation claim on November 23, 1955. The referee reim-

bursed Vinita for burial expense in the sum of $400; he awarded compensation to each of the four minor children in the sum of $7.50 a week for 400 weeks, to be paid to their mother, Vinita, as legal guardian and curatrix, for the support, education, and maintenance of the children. The referee found Vinita's marriage to Mr. Reneau on August 6, 1955, and did not award her any part of the total death benefit. As to any claim the employer and insurer may have had by way of subrogation, the referee made "no finding as to subrogation, as such a finding is not necessary to this award." Upon review, on January 9, 1956, the Industrial Commission affirmed the award of the referee.

The appellant employer and insurer contend that "it was error to award no share of the death benefit to the widow and allow appellants no credit for the amount she received from the third party." Specifically, their contention is that under the death award statute (V.A.M.S. § 287.240) the widow is conclusively presumed to be a total dependent and therefore "entitled to a proportion of the death benefit" until her remarriage, here two years, one month, and seventeen days. The appellants say that they are aggrieved by the commission's omission because the widow has received $4,400 from a negligent third party (V.A.M.S. § 287.150) and, under their right to subrogation, they are entitled to have her third-party recovery treated as an advance on future payments of compensation.

We do not reach and are not now concerned with the employer's and insurer's right to subrogation in Vinita's third-party recovery. The determinative question, as far as this appeal is concerned, is whether, upon this record, there is any support for the commission's award of all the total death benefits to the four minor children. Excerpting, as far as applicable to this case, the total death benefit statute, V.A.M.S. § 287.240 (Laws Mo.1953, p. 530), provides:

"(2) The employer shall also pay to the total dependents of the employee a single total death benefit, * * *.

"(4) The word 'dependent' as used in this chapter shall be construed to mean a relative by blood or marriage of a deceased employee, who is actually dependent for support, in whole or in part, upon his wages *at the time of the injury. The following persons shall be conclusively presumed to be totally dependent for support upon a deceased employee* and any death benefit shall be payable to them, to the exclusion of other total dependents:

"(a) *A wife upon a husband* legally liable for her support, * * * *provided, that on the death or remarriage of a widow, the death benefit shall cease* unless there be other total dependents entitled to any unpaid remainder of such death benefit under this chapter;

"(b) *A natural,* posthumous, or adopted *child or children,* * * *. In case there is a wife* * * * *and a child or more than one child thus dependent, the death benefit shall be divided among them in such proportion as may be determined by the commission after considering their ages and other facts bearing on such dependency."

As indicated, the referee and the commission simply found that Vinita was married to Willard Reneau on August 6, 1955, and awarded the single total death benefit to the four minor children. The referee and the commission also found that Vinita was a total dependent when her husband was killed on June 19, 1953, but for the period of her widowhood, two years, one month and twenty-seven days, made no finding as to any "facts bearing on such dependency." V.A.M.S. § 287.240(4) (b), supra. Instead of determining the fact and extent of dependency "at the time of the

injury," the referee and the commission have considered only the fact of Vinita's remarriage on August 6, 1955, before the compensation claim was tried and an award made. In fairness to the referee and the commission it should be noted, under the stipulation, that the only facts before them were the facts of the dates. and date of death, of remarriage, the date of the hearing and award, and the fact of the four children and their ages. There were no other facts before them. but that does not obviate the necessity of determining dependency "at the time of the injury" and the finding and award distributing the benefits are not supported by facts "determined by the commission after considering their ages and other facts bearing on such dependency." Compare: Daniels v. Kroeger, Mo.App., 294 S.W.2d 562. This is not to say what if any sum must be awarded to Vinita during her widowhood; it is to say that dependency must be determined as of the date of Harry's injury and death and that the commission's distribution of the total death benefits among the dependents must be supported by the record. In this view of the appeal it is not necessary to review previous awards distributing total death benefits and reconcile the cases reviewing the awards. See and compare: Daniels v. Kroeger, supra; Masters v. Southwestern Greyhound Lines, Mo.App., 205 S.W.2d 882 and Allen v. St. Louis-S. F. Ry. Co., 338 Mo. 395, 90 S.W. 2d 1050.

Consequently, the judgment is affirmed in so far as it approves the finding and award that the accidental death arose out of and in the course of the employment and was compensable, but dependency and the distribution of the total death benefits not having been determined as of the date of the injury and death and the finding in this respect not being supported by the record, the judgment is reversed and the cause remanded to the circuit court with directions to remand the cause to the Industrial Commission to the end that a hearing may be had and an appropriate award made in accordance with this opinion.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.