Ronald A. HARNESS, Jr., Deceased, Robin Yvonne Harness, Ronald Arthur Harness, III, and Elizabeth Harness, Claimants–Respondents,

v.

SOUTHERN COPYROLL, INC., Employer–Appellant,

and

FirstComp Insurance Company, Insurer–Appellant.

No. SD 29309.

Missouri Court of Appeals, Southern District, Division One.

June 29, 2009.

Kevin Hays Dunaway, Springfield, MO, for Appellant.

William W. Francis, Jr., Springfield, MO, for Respondents.

JEFFREY W. BATES, Judge.

Ronald Harness, Jr. (Employee) died in a car accident while in the employ of Southern Copyroll, Inc. (Employer), whose worker's compensation coverage was insured by FirstComp Insurance Company (Insurer). The Labor and Industrial Relations Commission (Commission) found that Employee's car accident arose out of and in the course of employment and awarded compensation. Employer and Insurer (collectively, Appellants) appealed. This Court affirms.

Employee worked for Employer in Fair Grove and lived with his wife and two children in Pleasant Hope. Fair Grove is south and east of Pleasant Hope. Occasionally, Employee's supervisor, Richard Gour-

ley (Gourley), would instruct Employee to travel further south from Employer's place of business in Fair Grove to work at Custom Tool Crafters, LLC (CTC), another business in Ozark. Both businesses were owned by Gary English (English), who was the sole stockholder of each one. When Employee traveled from Fair Grove to Ozark, he drove his own vehicle. He was reimbursed by Employer for the round-trip mileage between the businesses, which totalled 66 miles. Employee also was paid his wages during his travel time.[1] After finishing work at CTC in the late afternoon, Employee was not required to travel back to Employer to clock out. Nevertheless, Employee often checked in with Employer before going home.[2]

On August 8, 2006, Gourley instructed Employee to travel to CTC around noon and work there until 3:30 p.m. Employee was supposed to take over for a CTC employee who had to leave work early. Employee followed Gourley's instructions. At 4:00 p.m., Employee left CTC at the same time as another CTC employee, Tim Church (Church). Because Employee was almost out of gas, he asked Church to follow Employee's vehicle to a nearby convenience store. Church did so. As Employee was filling his vehicle with gas, Church went into the convenience store. According to Church, when he exited the store, Employee said he was going home.

Employee then headed north on Highway 65. Just beyond the intersection of Highway 65 and I–44, Employee was killed in an automobile accident. At the time of the accident, Employee was following a northerly route that Employer would expect Employee to use if he were returning to Employer's business in Fair Grove. Employee also would follow the same route if he were going to his home in Pleasant Hope.

In October 2006, Employee's wife and two children (collectively, Respondents) filed their worker's compensation claim for dependent benefits as a result of Employee's death. Employer disputed the claim and alleged that Employee's accident was not in the scope and course of employment.

In November 2007, a hearing was held before an administrative law judge (ALJ). The witnesses testifying on behalf of Respondents included Employee's adult stepson, Shawn Keen (Keen), and Employee's wife, Yvonne Harness (Wife). At the time of Employee's accident, Keen worked for CTC. He testified that, around 3:40 p.m. on the day of the accident, Employee told Keen that "after a quick stop by the Fair Grove plant, he would be headed home." Keen, who lived in Fair Grove, also testified that he had ridden with Employee from Fair Grove to CTC on four or five occasions. On each such occasion, it was Employee's consistent practice on the return trip to go back to the Fair Grove plant, "check on a few things, and then he would take [Keen] home." Wife also testified that she knew of no reason why Employee would need to come directly home on the day of the accident.

1. In Appellants' brief, they assert without a supporting citation to the record that "Gourley testified by deposition that the employees were *not* paid their time to drive back from Ozark to the Fair Grove facility[.]" Actually, Gourley conceded in his deposition testimony that Employee often was paid for his drive time back to the plant. Gourley confirmed that Employee was paid his "hourly wage" for his entire drive time during "normal work hours," as well as for time after hours "until he clocked out" in Fair Grove.

2. Sometimes, Employee used handwritten notes to document when his workday ended, and those times were entered into Employer's records later.

Several witnesses for Employer testified by deposition, including English. He was Employer's sole shareholder. English testified that Employee was employed and paid by Employer, even though Employee was at times directed to work elsewhere. According to English, Employer's principal place of business is in Fair Grove. English explained that Employer's business was conducted at two physical locations in Fair Grove, but English identified the location where his office was located as Employer's principal place of business. He described it as "our headquarters ... where the financials are done."[3] English admitted that Employer does not have a business location in Ozark.[4] Likewise, Gourley testified that Employer's principal place of business was in Fair Grove. According to Gourley, he did not go to Employer's Fair Grove plant on the day of the accident because he had to travel by airplane to Michigan on a business trip. Before Gourley left, he had called Employee and asked him to go to CTC around noon on the 8th of August. Gourley recalled that Employee had asked to leave CTC at around 3:30 p.m., which was when the work day for other CTC employees ended. According to Gourley, Employee "wanted to go home as soon as he got off work." Gourley's wife, Heather Gourley (Heather) also testified.[5] She worked as the general manager for both Employer and CTC, but her wages were paid only by Employer. Heather's job responsibilities were financial in nature. She was responsible for payroll, taxes, insurance and submitting required filings to the Missouri Secretary of State. Heather testified that, in all of those areas, Employer and CTC maintained separate and distinct operations. Heather described Employee as Gourley's "right-hand man[.]" She conceded that it would not be unusual for Employee to check in at the Fair Grove plant to see if anything needed to be done, particularly since Gourley was out of town.

In February 2008, the ALJ issued an award finding that Employee died as a result of injury arising out of and in the course of his employment. The ALJ made a factual finding that: (1) Employee was to be paid roundtrip mileage for the trip between Employer's principal place of business in Fair Grove and CTC in Ozark; (2) when Employee left CTC, he was traveling on a route that led to the Employer's principal place of business in Fair Grove; and (3) Employee was killed before reaching Fair Grove. Therefore, the ALJ rejected Employer's assertion that § 287.020.5 precluded compensation.[6] The ALJ decided this statutory subsection did not apply because Employee was not traveling from Employer's principal place of business to his home or from his home to his Employer's principal place of business at the time of the accident. Respondents were awarded death benefits and burial expenses. In July 2008, the Commission unanimously adopted and affirmed the ALJ's award. Appellants appealed from the award.

3. Employer's principal place of business in Fair Grove is located at 10 West Old Mill Road. That facility also houses laser cutting machines for sheet steel. Employer's second location in Fair Grove is located at 2298 East Farm Road 10. Employer manufactures aluminum rollers in that facility.

4. As noted above, English is CTC's sole shareholder. CTC operated as a separate and distinct business in Ozark and manufactured dent removal tools.

5. Because the Gourleys share the same surname, we use Heather's first name for clarity. No disrespect is intended.

6. All statutory references are to RSMo Cum. Supp. (2006) unless otherwise specified.

Because the Commission adopted the ALJ's findings and conclusions, this Court will review them in this appeal from the Commission's final award of compensation. *Hawthorne v. Lester E. Cox Medical Centers,* 165 S.W.3d 587, 592 (Mo.App. 2005); *Birdsong v. Waste Management,* 147 S.W.3d 132, 137 (Mo.App.2004). This Court reviews the award of the Commission pursuant to § 287.495.1 RSMo (2000). Under that statute, we may modify, reverse, remand for hearing, or set aside the award only if: (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient, competent evidence in the record to warrant the making of the award. *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222 (Mo. banc 2003). An appellate court must examine the whole record to determine if it contains sufficient, competent and substantial evidence to support the award. *Id.* at 222–23. We will set aside the Commission's award if it is contrary to the overwhelming weight of the evidence. *Id.* "Only in rare cases will we find an award by the Commission to be contrary to the overwhelming weight of the evidence." *Roberts v. Missouri Highway and Transp. Comm'n,* 222 S.W.3d 322, 331 (Mo.App.2007).

On appeal, "no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding." § 287.495.1 RSMo (2000). Therefore, this Court defers to the Commission on issues involving the credibility of witnesses and the weight to be given to their testimony. *Birdsong,* 147 S.W.3d at 137. "Commission decisions that are interpretations or applications of law, on the other hand, are reviewed for correctness without deference to the Commission's judgment." *Id.* at 138; *Hawthorne,* 165 S.W.3d at 592. We independently review questions of law. *Johnson v. Denton Constr. Co.,* 911 S.W.2d 286, 287 (Mo. banc 1995).

In Appellants' first point, they contend the Commission's finding that Employee's car accident arose out of and in the course of employment was erroneous as a matter of law because the Commission misapplied § 287.020.5. That subsection of the statute, which was amended in 2005, states in relevant part:

> Injuries sustained in company-owned or subsidized automobiles in accidents that occur while traveling from the employee's home to the employer's principal place of business or from the employer's principal place of business to the employee's home are not compensable.

*Id.* As Appellants correctly note, this Court is required to strictly construe this exclusionary provision. § 287.800.1. Therefore, this statute can be given no broader application than is warranted by its plain and unambiguous terms. *State ex rel. Wright v. Carter,* 319 S.W.2d 596, 598 (Mo. banc 1958); *Allcorn v. Tap Enterprises, Inc.,* 277 S.W.3d 823, 829 (Mo.App.2009) (when strict construction is required, a court should not enlarge or extend the law; only the clear, plain, obvious or natural import of the words should be used); *Ahern v. P & H, LLC,* 254 S.W.3d 129, 135 (Mo.App.2008) (when construing § 287.020, an appellate court must consider the plain and ordinary meaning of the words used therein).

The only issue raised by Appellants is whether Employee was injured "while traveling ... from the employer's principal place of business to the employee's

home...."[7] Appellants contend that this exclusionary clause in § 287.020.5 defeats Employee's claim because: (1) Employer and CTC should both be treated as the employer within the meaning of this exclusion; and (2) this one commingled employer has three principal places of business, which includes the business location in Ozark. Appellants' argument lacks merit.

First, the exclusionary clause in § 287.020.5 can be given no broader application than is warranted by its plain and unambiguous terms. The statute only refers to one employer. In the case at bar, Employer filed the report of injury and was the only employer named in the claim for compensation. At the hearing before the ALJ, the undisputed evidence disclosed that Employer and CTC were separate companies that had separate employees. These two companies maintained completely separate and distinct operations with respect to payroll, taxes, insurance and required governmental filings. Further, whenever Employee performed any duties at CTC, he was paid by Employer for that work. Finally, we note that the ALJ's findings of fact and conclusions of law stated:

> The record was left open until December 8, 2007, for the parties to present additional evidence regarding the nature of a limited liability corporation [CTC] which may have been considered Claimant's additional employer. However, no evidence concerning an additional employer was presented. The only evidence presented by the parties was that Claimant was an employee of [Employer], even though he was performing work on the day of his death for [CTC].

Appellants' argument that CTC also should be considered the employer in this case would require a liberal, rather than a strict, construction of § 287.020.5. This we cannot do. § 287.800.1.

Second, Appellants' argument is based upon the premise that § 287.020.5 would permit one employer to have more than one principal place of business. That premise is flawed. There is no statutory definition for the phrase "principal place of business" as used in § 287.020.5. When a statutory term is not defined, courts apply the ordinary meaning of the term as found in the dictionary. *Great Southern Bank v. Director of Revenue*, 269 S.W.3d 22, 24–25 (Mo. banc 2008); *Cook Tractor Co., Inc. v. Director of Revenue*, 187 S.W.3d 870, 873 (Mo. banc 2006); *Sheedy v. Missouri Highways and Transp. Comm'n*, 180 S.W.3d 66, 72–73 (Mo.App.2005). Because the word "principal" was used by the General Assembly to modify the phrase "place of business," we must give effect to that limitation. *See Dubinsky v. St. Louis Blues Hockey Club*, 229 S.W.3d 126, 130 (Mo. App.2007) (each word, clause, sentence and provision of a statute have effect and should be given meaning). The word "principal" is defined by Black's Law Dictionary (8th ed.2004) to mean: "Chief; primary; most important." *Id.* at 1230. Therefore, giving the phrase "the employer's principal place of business" a strict construction as we must, § 287.020.5 only authorizes the employer to have one principal place of business. According to English's testimony, that location was the headquarters office in Fair Grove where the financials were done.

---

7. Appellants' argument assumes that Employee was in a subsidized automobile because Employer paid Employee's mileage. This is a question of first impression. The phrase "subsidized automobiles" is not defined in § 287.020.5 or elsewhere in Chapter 287. Because it is unnecessary to decide whether Employee was in a subsidized automobile to address Appellants' first point, we decline to do so.

Based upon this Court's strict construction of § 287.020.5, the exclusionary provision found therein would only apply if Employee had been killed while traveling from Employer's principal place of business in Fair Grove to Employee's home. That did not occur. Therefore, the Commission correctly applied the law in awarding compensation to Respondents. Point I is denied.

■■ In Appellants' second point, they contend the Commission's finding that Employee's car accident arose out of and in the course of employment is not supported by substantial and competent evidence. Appellants argue that Employee was not fulfilling any job duties for the Employer and was on his way home when the accident occurred. For the reasons that follow, this argument lacks merit.

■■■ In order to receive worker's compensation benefits, Respondents must show that Employee's death was caused by an accident "arising out of" and "in the course of" his employment. § 287.120.1; *Gardner v. Contract Freighters, Inc.,* 165 S.W.3d 242, 245 (Mo.App.2005). A death or injury "arises out of" the employment if it is a natural and reasonable incident thereof. *Custer v. Hartford Ins. Co.,* 174 S.W.3d 602, 610 (Mo.App.2005). It is "in the course of employment" if the action occurs within a period of employment at a place where the employee may reasonably be fulfilling the duties of employment. *Id.* In deciding whether an injury arises out of and in the course of employment, this Court considers the particular facts and circumstances of each case. *Id.*

■■ Generally, an accident occurring while an employee is going to and from work is not compensable. *See Garrett v. Industrial Commission,* 600 S.W.2d 516, 519 (Mo.App.1980). This result attends because "[t]he employer usually controls neither the place of residence chosen by the employee nor his mode of transport and the employer therefore plays no part in the relative extent of the risk incurred by the employee in traveling to and from work." *Id.* An exception exists, however, "where the employer, because of the distance to the job site or for the convenience of the employer, furnishes the employee's transportation, compensates the employee for use of his own vehicle, or pays the employee for travel time." *Id.; see Reneau v. Bales Electric Company,* 303 S.W.2d 75, 79 (Mo.1957). This exception, known as the *Reneau* doctrine, is generally interpreted to mean that an employee whose work entails travel away from the employer's primary premises is held to be in the course of employment during the trip, except when on a distinct personal errand. *Custer,* 174 S.W.3d at 611; *Williams v. Transpo Int'l, Inc.,* 752 S.W.2d 501, 505 (Mo.App.1988); *Baldridge v. Inter–River Drainage Dist. of Missouri,* 645 S.W.2d 139, 140–41 (Mo.App.1982). The employee would be traveling in the course of employment until the trip ended. *Custer,* 174 S.W.3d at 612; *Baldridge,* 645 S.W.2d at 140–41. However, the recent amendment to § 287.020.5, as discussed in the previous point, abrogated the *Reneau* doctrine to the extent that injuries in a company-owned or subsidized automobile are not compensable while traveling from: (1) the employee's home to employer's principal place of business; or (2) the employer's principal place of business to employee's home. Unless one of these exceptions applies, the *Reneau* doctrine remains in effect to allow compensation. The Commission determined that neither exception applied and awarded benefits.

Based upon this Court's review of the record, the Commission's decision is supported by substantial evidence. The Commission found that Employee was killed during the compensable portion of his trip

because: (1) he was to be paid roundtrip mileage between Fair Grove and Ozark; and (2) he was on a highway leading directly to Fair Grove when he was killed. There was sufficient evidence to support that finding. According to witness Keen, Employee intended to stop by the Fair Grove plant before going home. Wife also testified that she knew of no reason why Employee needed to go directly home the day of the accident. Employer admitted that Employee was following a route Employer would expect him to travel on Highway 65 north to get back to Employer's principal place of business in Fair Grove. Employer reimbursed Employee for his round-trip mileage between Fair Grove and Ozark, and Employee had not yet reached Fair Grove when the accident occurred. As noted above, the 2005 amendment to § 287.020.5 is inapplicable because Employee was not killed while traveling from Employer's principal place of business in Fair Grove to his home. Under the *Reneau* doctrine, Respondents were entitled to compensation because Employee was killed during the compensable portion of his trip back to Fair Grove. Point II is denied.

The Commission's decision that Employee's car accident arose out of and in the course of his employment is supported by competent and substantial evidence. The Commission's final award allowing compensation is affirmed.

BARNEY, J., and SCOTT, P.J., Concur.