

## *Missouri Court of Appeals*
### *Southern District*
#### *Division Two*

| | | |
|---|---|---|
| ANDREW HALSEY and TAMMY KENNEDY, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| vs. | ) | No. SD36658 |
| | ) | |
| TOWNSEND TREE SERVICE COMPANY, LLC., | ) | FILED: April 20, 2021 |
| | ) | |
| Respondent. | ) | |

### APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

### **AFFIRMED**

Andrew Halsey and Tammy Kennedy ("Parents") appeal the award of the Labor and Industrial Relations Commission ("Commission"), which was based on findings that the death of their son, Tyler Halsey ("Employee"), was caused by a compensable "injury" by "accident" as those terms are defined by Missouri's Workers' Compensation Law. *See* section 287.020.[1] Parents challenge the compensable "injury" finding in three points and challenge the "accident" finding in one point. Finding no reversible error as alleged in any of Parents' points, we affirm.

### **Factual and Procedural Background**

The following facts are undisputed. On Tuesday, July 19, 2016, Employee began his employment with Townsend Tree Service Company, LLC ("Employer"). On that day and the three days that followed, Employee worked approximately ten hours a day outdoors in and

---

[1] All statutory references are to RSMo 2016, unless otherwise indicated.

around Poplar Bluff, Missouri. At 2:00 p.m. on Friday, July 22, 2016, "one of the hottest days of the year in Southeast Missouri[,]" the heat index was approximately 114 degrees. Around 4:00 p.m., Employee "was asked to collect some caution signs and, in the process of doing so, he passed out." Following a 9-1-1 call, Employee was diagnosed with heat stroke and was hospitalized. He died the following day, and hyperthermia was given as his official cause of death. At the time of his death, Employee was 23 years old, 6'1'' in height, and weighed approximately 300 pounds.

While engaged in a wrongful death lawsuit filed by Parents against Employer and others, Parents filed a "Claim for Compensation" with the Division of Workers' Compensation. Parents conceded in their filing, however, that they were *not* making a claim for workers' compensation. Their allegations and claims, instead, were stated as follows:

> A civil case was litigated in the United States District Court – Eastern District of Missouri (Case No. 1:17-CV-00004) with [Employee]'s parents as plaintiffs and [Employer] and its parent company as defendants. The Court dismissed the case without prejudice … on jurisdictional grounds, finding that the issue of whether a compensable injury occurred must be decided by the Commission. *A compensable injury did NOT occur.* Three medical doctors diagnosed [Employee] as morbidly obese, and the ER doctor who treated him testified in a deposition that the obesity contributed to cause his death. Plaintiffs' and Defendants' causation experts both agreed. Because obesity is an idiopathic condition under Mo. Rev. Stat. 287.020.3(3) which directly or indirectly contributed to [Employee]'s death, the injury is not compensable.
>
> **TO BE CLEAR** – Plaintiffs filed solely for a factual determination by the Division…. *Claimants <u>deny</u> that this is a compensable event and deny that this was an accident or injury that would be entitled to workers['] compensation by law.*

(Emphasis added.)

Employer filed a response in which it disputed that obesity is an idiopathic condition and affirmatively argued that Employee's death qualified for and was covered by the exclusive

remedy of workers' compensation. Employer alleged that the amount of workers' compensation owed—covering Employee's medical and funeral expenses—had already been paid.

An evidentiary hearing was held before an Administrative Law Judge ("ALJ") at which no in-person witness testified but various exhibits were received into evidence, including depositions and reports. As identified by the ALJ in her final award, the contested issues in need of resolution were as follows:

1. Accident: Whether on or about July 22, 2016, the employee sustained an accident or occupational disease arising out of and in the course of his employment.

2. Medical Causation: Was Employee's injury and death medically causally related to an accident?

3. Idiopathic Involvement: There is a dispute as to whether obesity contributed directly or indirectly to Employee's death and whether obesity qualifies as an idiopathic condition.

4. Compensability: Whether the claim is compensable under the Missouri Workers' Compensation Law.

In addressing the contested issues, the ALJ made the following findings of fact: (1) "Employee sustained an accident arising out of and in the course of his employment on July 22, 2016"; (2) "Employee's work accident on July 22, 2016 was the prevailing factor in causing Employee's heat stroke and ultimate death"; (3) "Employee's obesity does not qualify as an idiopathic condition under Chapter 287"; and (4) "Employee's claim herein is compensable under Chapter 287."

In support of her findings of fact addressing whether obesity qualifies as an idiopathic condition, the ALJ made two related conclusions of law. First, the ALJ concluded that "in order for an idiopathic condition to qualify for the current workers' compensation exception, the employee's injury must be entirely idiopathic in nature such that no other factor precipitates the injury." Second, the ALJ cited *Ahern v. P & H, LLC*, 254 S.W.3d 129, 133 (Mo.App. 2008), and

3

concluded that, unlike the situation in that case, "[o]besity … does not cause any uncontrolled change in an employee's behavior by itself."

Parents filed an application for review with the Commission, which ultimately issued its final award in a supplemental opinion allowing compensation and affirming the ALJ's decision. In its supplemental opinion, the Commission stated as follows:

> We find, as a factual matter, that while employee's obesity may have contributed to his heat stroke and resulting collapse and death, his work outside as a laborer in extremely hot weather on July 22, 2016, constituted an unexpected traumatic event or an unusual strain and was the *prevailing factor* in causing both employee's heat stroke and resulting collapse and death. We note that the exclusion from category of compensable injuries of an injury resulting directly or indirectly from idiopathic causes is in the nature of an affirmative defense to the employer and is not the employee's burden to prove. *Gleason v. Treasurer of the State*, 455 S.W.3d 494, 502 (Mo. App. 2015).

> We affirm the administrative law judge's finding that employee's heat stroke and death arose out of and in the course of employee's employment with employer and, accordingly, is compensable under Chapter 287.

> This clarification of the administrative law judge's award does not detract from her correct analysis of the evidence in the record or her ultimate legal conclusions.

The Commission incorporated the ALJ's decision into its award to the extent it was not inconsistent with its supplemental opinion.

This appeal timely followed. Additional relevant facts are provided in our discussion of Parents' four points relied on. For ease of analysis, we first address their fourth point and then address together their first three points, albeit in reverse order.

### Standard of Review

> "This Court may modify, reverse, remand, or set aside the Commission's decision only when: (1) the Commission acted *ultra vires*; (2) the decision was procured fraudulently; (3) the facts found by the Commission do not support the award; (4) there was not sufficient competent evidence to support the award." *Mantia v. Mo. Dep't of Transp.*, 529 S.W.3d 804, 808 (Mo. banc 2017); section 287.495.1. The whole record must be examined to determine whether there is sufficient and competent evidence to support the Commission's decision. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222-23 (Mo. banc 2003). Questions of law are

4

reviewed *de novo*. *Cosby v. Treasurer of State*, 579 S.W.3d 202, 206 (Mo. banc 2019).

***Schoen v. Mid-Missouri Mental Health Center***, 597 S.W.3d 657, 659 (Mo. banc 2020) (footnote omitted).

## Discussion

Section 287.120.1 provides, in pertinent part, that "[e]very employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal *injury* or death of the employee by *accident* or occupational disease arising out of and in the course of the employee's employment." (Emphasis added.) As relevant to Parents' four points, section 287.020 provides the following definitions:

> 2. The word "**accident**" as used in this chapter shall mean an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury *caused by a specific event during a single work shift*. An injury is not compensable because work was a triggering or precipitating factor.
>
> 3. (1) In this chapter the term "**injury**" is hereby defined to be an injury which has arisen out of and in the course of employment. An injury by accident is compensable only if the accident was the prevailing factor in causing both the resulting medical condition and disability. "**The prevailing factor**" is defined to be the primary factor, in relation to any other factor, causing both the resulting medical condition and disability.
>
> (2) An injury shall be deemed to arise out of and in the course of the employment only if:
>
> (a) It is reasonably apparent, upon consideration of all the circumstances, that the accident is the prevailing factor in causing the injury; and
>
> (b) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life.
>
> (3) *An injury resulting directly or indirectly from idiopathic causes is not compensable*.

(Emphasis added.)

5

### *Point 4 – Section 287.495.1(4) Challenge to "Accident" Finding Fails*

In their fourth point, Parents assert a section 287.495.1(4) challenge to the Commission's

award, claiming that its finding that an "accident" occurred under section 287.020.2 was

erroneous. Specifically, Parents argue that "there was no sufficient competent evidence in the

record to find that [Employee]'s heat stroke and death were *caused by a specific event during a*

*single work shift*" and that the Commission's finding to the contrary was "against the

overwhelming weight of the evidence as *all the expert testimony* indicated that [Employee]'s

heat stroke and death were the result of *the accumulated heat load over his four days of*

*employment*." (Emphasis added.) Parents' argument is not persuasive and their challenge fails

because it does not follow the mandatory analytical framework for a section 287.495.1(4)

challenge.

In its award, the Commission adopted the following findings of the ALJ as to the

occurrence of an accident. Those specific findings, as stated by the ALJ, were as follows:

> Based on all of the evidence presented, I find that Employee's work outside as a
> laborer in the extremely hot weather *on July 22, 2016*, was both, an unexpected
> traumatic event or an unusual strain. *The testimony establishes that Employee*
> *was doing fine until the afternoon on Friday, July 22, 2016*, at which point he
> eventually collapsed from a heat stroke, and his body functions began to shut
> down. He was diagnosed and treated for heat stroke that day, and he died the
> following day.

(Emphasis added.) In other words, the Commission found that Employee's engagement in work-

related activities in extreme heat during a single work shift, on July 22, 2016, to the point of

collapse satisfied the "accident" requirements of section 287.020.2.

In challenging this finding, Parents rely on the opinions of their experts, Douglas Casa

and Dr. John Jardine. By way of depositions, Casa and Dr. Jardine, testified, respectively, "[f]or

me the crucial timing is from Tuesday through Friday because of the accumulated heat load he

6

had from those days" and "[Employee] was likely dehydrated, you know, on day one, more dehydrated day two, day three, day four, because it's a -- there is a cumulative effect."

Parents, additionally, rely upon a quotation from the written report of the Employer's expert witness, Dr. Russell Cantrell. They note that Dr. Cantrell concluded that "[b]ased on the medical records available for my review, it is my opinion, within a reasonable degree of medical certainty, that [Employee]'s occupational activities *leading up to and including July 22, 2016* were the prevailing factor in the cause of his diagnosed heat stroke and ultimate death." (Emphasis added.) Parents further rely upon a small out-of-context excerpt from Dr. Cantrell's deposition testimony in which he addressed questions concerning Employee's work activities on July 19 through July 22 and their cumulative effect.

Parents ignore, however, the portions of Dr. Cantrell's deposition testimony that support and are favorable to the award. Notably, Dr. Cantrell provided the following testimony:

> [Q.] And your opinion is it is his work during all of those days which contributed to his heat stroke and ultimate death by hyperthermia; correct?
>
> [A. (by Dr. Cantrell)] Well, I think that you could potentially presume, and again, *we kinda really only know the complaints, the symptoms that were presented on that particular Friday*. As was discussed in some of his medical records, there are -- you know, sometimes there are difficulties in an individual, on an ad lib basis, bringing in enough fluids to counter the fluids that may have been lost from perspiration and that *can have* an additive effect.
>
> It's also -- it's unknown how much fluid he consumed versus his co-workers and it's also unknown what effects some trace amounts of alcohol found in his blood at the time he was in the emergency room might have factored into any potential dehydration or lack of fluid consumption that might have been a factor as well.
>
> [Q.] Well, I'm just asking you that whether or not your opinion, to a reasonable medical certainty here, is that the cumulative effects of [Employee]'s work exposure from July19 to July 22 contributed to cause his hyperthermia and ultimate death from that disease?
>
> [A. (by Dr. Cantrell)] I would say that there [sic] is very possible. *I would agree completely that his -- the physical exertion that he had to undertake on that day and on that day in which the temperature was recorded was certainly the primary*

7

*prevailing factor*.  I don't -- I don't doubt that there may have been cumulative effects to his physical exertion coupled with his fluid consumption in the days preceding his heat stroke that *might* have been a factor as well.

[Q.] So you would agree that the work was, on July 22, his work that day was a triggering or precipitating factor that led to his hyperthermia and death then; correct?

[A. (by Dr. Cantrell)] No.  No, *I think that his work that day was the prevailing factor*. but if – I wouldn't disagree if you asked me to -- if you asked me the question do I believe that his cumulative work over those four days was a prevailing factor, I wouldn't disagree with that opinion either.

[Q.]  Okay. So you're unable to say with any certainty to what degree or percentage the work on Friday [sic], but you can say with certainty that it was the work exposure over July 19 to July 22 time period that cumulatively caused his hyperthermia and ultimate death?

[A. (by Dr. Cantrell)] Yes.  The reason I would say that is because *I'm unaware, based upon the records that I reviewed, of any symptom presentation of confusion or other symptoms that might have referenced the heat-related illness in the days prior to that, and obviously, to my knowledge, nobody was monitoring lab values and fluid intake, fluid output, that might have been a reflection of a gradual process related to a heat-related illness.*

(Emphasis added.)

This testimony shows that Dr. Cantrell, when pressed by the examiner, merely acknowledged that Employee's injury was the result of, *at most*, his heat exposure over the period from July 19, 2016, through July 22, 2016.  He emphasized, however, there was no indication or data to suggest that anything was awry before the afternoon of July 22, 2016, and, despite some equivocation, expressed an opinion that the working conditions *on that day* were the prevailing factor in causing Employee's injury.

"Medical opinion testimony as to causation is competent, and can be viewed as substantial evidence."  ***Guinn v. Treasurer of State***, 600 S.W.3d 874, 881 (Mo.App. 2020).  "The Commission is free to believe or disbelieve any evidence."  ***Sickmiller v. Timberland Forest Products, Inc.***, 407 S.W.3d 109, 113 (Mo.App. 2013) (internal quotation marks omitted).

> This Court defers to the Commission's factual findings and recognizes that it is the Commission's function to determine credibility of witnesses. *CNW Foods, Inc. v. Davidson*, 141 S.W.3d 100, 102 (Mo.App. 2004). This Court "may not substitute its judgment on the evidence," and when the "evidence before an administrative body would warrant either of two opposed findings, the reviewing court is bound by the administrative determination, and it is irrelevant that there is supportive evidence for the contrary finding." *Pulitzer Pub. Co. v. Labor & Indus. Relations Comm'n*, 596 S.W.2d 413, 417 (Mo. banc 1980).

*Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 629 (Mo. banc 2012).

"An effective section 287.495.1(4) challenge requires the challenger to marshal all record evidence favorable to the award." *Guinn*, 600 S.W.3d at 881. Here, however, Parents omitted any mention of the competent and substantial evidence from Dr. Cantrell's testimony that supports the Commission's award, which refutes, by its very existence, Parents' premise that all of the expert testimony is contrary to the award. *See id.* at 882.

Moreover, Parents narrow focus on only expert testimony results in their omission from their argument the competent and substantial lay testimony supporting the award. "The testimony of lay witnesses as to facts within the realm of lay understanding can constitute substantial evidence of the nature, cause, and extent of the disability, especially when taken in connection with, or where supported by, some medical evidence." *Pavia v. Smitty's Supermarket*, 118 S.W.3d 228, 234 (Mo.App. 2003) (internal quotation marks omitted).

The relevant lay testimony includes that of Jeffrey Richardson and Christopher Bennett, Employee's work supervisor and co-employee, respectively. Richardson described his first-hand experience in extreme heat on Friday, July 22, 2016, in the following manner: "And it was so hot that day, you know, we couldn't work for no longer than 20 minutes at most before having to stop [sic] take water breaks for like 30, 40 minutes. And we pretty [sic] just sat around that day, because it was so hot." Despite taking such precautions, Richardson affirmed that he felt "woozy" by afternoon. Bennett also described being affected by the heat on that day, claiming

9

that he "was about to pass out" by 4:00 p.m. When asked about the heat's effect on Employee on the days that he worked, Bennett responded, "[Employee] was going really good. He was doing really good *up until that Friday*." (Emphasis added.)

Parent's omission of material substantial evidence favorable to the award robs their argument of any analytical or persuasive value, thereby dooming their section 287.495.1(4) challenge. *See Guinn*, 600 S.W.3d at 882. For this reason, Parent's fourth point is denied.

### Points 1, 2, and 3 – Burden of Production under Section 287.020.3(3) was not Satisfied

Parents do not contest that Employee suffered an "injury" as that term is defined by section 287.020.3(1)-(2). Rather, in their first three points, Parents challenge the Commission's award, arguing that the section 287.020.3(3) "idiopathic causes" exception applies to Employee's injury and that, therefore, as provided in that section, it is not compensable.

We begin with the third point, in which Parents assert a 287.495.1(1) challenge that the Commission "acted without or in excess of its power[s]" in its legal conclusion that "the exclusion from category of compensable injuries of an injury resulting directly or indirectly from idiopathic causes is in the nature of an affirmative defense to the employer and is not the employee's burden to prove." (Emphasis omitted.) This legal conclusion, Parents argue, was a misinterpretation of section 287.020.3(3), in that the statute "provides that an injury resulting directly or indirectly from idiopathic causes is not compensable and nothing in that section precludes an employee from raising that exception to compensability." We agree with Parents.

The Commission's expressed reliance upon *Gleason v. Treasurer of the State*, 455 S.W.3d 494 (Mo. App. 2015), as support for its legal conclusion is misplaced. At issue in that case was whether the claimant-appellant, Gleason, who had appealed the Commission's award denying compensation, had met his burden to establish that his injury (sustained after falling from atop a railcar) arose out of and in the course of employment as set forth by section

10

287.020.3(2)(a) and (b). *Id.* at 498-502. The Court concluded that Gleason had satisfied the requisite burden and rejected an argument to the contrary, proffered by the respondent, the Second Injury Fund ("SIF"), "that unless we require claimants to prove *why* they fell, we will be permitting a claimant to recover for injuries resulting from idiopathic causes." *Id.* at 502. In rejecting that argument, the Court stated, that once it is established that an injury arose out of and in the course of employment, "any claim that an injury is nonetheless not compensable *is in the nature of an affirmative defense*." *Id.* (emphasis added). The court noted, however, that the SIF "neither alleged, nor sought to establish, that Gleason's injuries resulted directly or indirectly from an idiopathic cause." *Id.*

There are two problems with the Commission's reliance on *Gleason* as support for the challenged legal conclusion. First, the affirmative defense language in *Gleason* is arguably *dicta*, in that it was in response to an argument advanced by *the respondent*, and, therefore, not essential to the Court's resolution of the claim on appeal. *See Davison v. Dairy Farmers of America, Inc.*, 449 S.W.3d 81, 85 n.4 (Mo.App. 2014) ("Obiter dicta, by definition, is a gratuitous opinion. Statements are obiter dicta if they are not essential to the court's decision of the issue before it." (internal quotation marks omitted)).

The second problem arises from the difference in the procedural posture of the parties in *Gleason* and in the instant case. The claimant employee in *Gleason* asserted he had suffered a compensable injury and the SIF argued that the injury was not compensable because it could have resulted from an idiopathic cause. In that posture, the *Gleason* court held that the employee's burden of proof was limited to proving that his injury arose out of and in the course of his employment. *Gleason*, 455 S.W.3d at 502. The court also observed that, the SIF "neither alleged, nor sought to establish, that Gleason's injuries resulted directly or indirectly from an

11

idiopathic cause." *Id.* In the instant case, however, the legal positions of the respective parties are reversed. Parents, as the SIF argued in *Gleason*, are the proponents of the proposition that Employee's injury is not compensable because it resulted from an idiopathic cause and Employer is in the same position as the employee in *Gleason*, in that it is the proponent of the proposition that Employee's injury arose out of and in the course of his employment.

"In the absence of a specific statute or rule that provides otherwise, 'the party asserting the positive of a proposition bears the burden of proving that proposition.'" *Martz v. Martz*, 323 S.W.3d 53, 57 (Mo.App. 2010) (quoting *Dycus v. Cross*, 869 S.W.2d 745, 749 (Mo. banc 1994)). Here, as the proponents of the proposition that the section 287.020.3(3) idiopathic causes exception applies, it was Parents' burden, not Employer's, to prove the truth of that proposition. *See id.*

Parents' section 287.020.3(3) burden of proof has two parts: the burden of production and the burden of persuasion. *Annayeva v. SAB of TSD of City of St. Louis*, 597 S.W.3d 196, 200 n.8 (Mo. banc 2020) (citing *Krispy Kreme Doughnut Corp. v. Dir. of Revenue*, 488 S.W.3d 62, 67 (Mo. banc 2016)). As relevant here, the burden of production is "a party's duty to introduce enough evidence on an issue to have the issue decided by the fact-finder[.]" *Kinzenbaw v. Dir. of Revenue*, 62 S.W.3d 49, 53 n.6 (Mo. banc 2001) (internal quotation marks omitted). When the burden of production is satisfied, there remains the burden of persuasion, which is "a party's duty to convince the fact-finder to view the facts in a []way that favors that party." *Id.* (internal quotation marks omitted).

Agreeing with Parents that they could assert and had the burden of proof on the issue of whether Employee's injury was not compensable under section 287.020.3(3), however, does not end our inquiry. In order for the Commission's erroneous legal conclusion to require reversal of

12

the award, Parents must also demonstrate that they met their burden of production by introducing substantial evidence upon which the Commission could have decided the applicability of section 287.020.3(3). *Id.* We, therefore, turn to Parents' second point where they assert a 287.495.1(4) challenge to the award. Specifically, Parents argue that the Commission's factual findings under section 287.020.3(3) are "against the overwhelming weight of the evidence as all the expert testimony indicated that [Employee]'s morbid obesity was an idiopathic condition unique or innate to him which *contributed* to his heat stroke and death." (Emphasis added.) Parents' argument fails because it misapprehends and misapplies section 287.020.3(3).

To sustain their burden of proof under section 287.020.3(3), Parents first had to prove the existence of at least one idiopathic cause of the alleged resulting injury. *Ahern v. P & H, LLC*, 254 S.W.3d 129, 135 (Mo.App. 2008) (section 287.020.3(3) indicates "that a vast number of possible idiopathic causes exist, any one of which will render a resultant injury noncompensable"). In the absence of an idiopathic cause, section 287.020.3(3) does not apply. *Taylor v. Contract Freighters, Inc.*, 315 S.W.3d 379, 383 (Mo.App. 2010) (Lynch, P.J., concurring opinion) ("Because Claimant's injuries were not the result, either directly or indirectly, of an idiopathic cause, the Commission erred in applying section 287.020.3(3) to deny Claimant compensation for his injuries.").

Assuming, *arguendo*, that Employee's morbid obesity was idiopathic,[2] Parents had to, nevertheless, produce evidence of the requisite causal connection to Employee's injury, *i.e.*, that Employee's morbid obesity was a "cause" of Employee's heat stroke. "Whether to award compensation based on an injury's relation to an idiopathic cause is a question of causation[.]" *Crumpler v. Wal-Mart Associates, Inc.*, 286 S.W.3d 270, 272 (Mo.App. 2009).

---

[2] The term "idiopathic" has been defined as "peculiar to the individual, innate." *Alexander v. D.L. Sitton Motor Lines*, 851 S.W.2d 525, 527 n.3 (Mo. banc 1993); *Ahern*, 254 S.W.3d at 133.

Parents argument that they met their burden to prove such causation is best summarized by the following excerpt from their brief:

> Nothing in subsection 3(3) requires a determination of the extent to which the idiopathic condition *caused* the injury as long as the idiopathic condition *contributed*, directly or indirectly, to the injury. Decedent's percent body fat does not matter. As discussed above, Decedent was morbidly obese and Dr. Cantrell and Dr. Jardine agreed that Decedent's morbid obesity *contributed* to his heat stroke and death, which is the relevant question.

(Emphasis added.) Indeed, from the initial filing of their "Claim for Compensation" form, through framing the contested issues in need of resolution at the hearing before the ALJ, and in this appeal, Parents have consistently maintained their position that section 287.020.3(3) only requires them to prove that Employee's morbid obesity *contributed* to his injury. This position, however, is not supported by the text of that subsection.

Section 287.020.3(3) provides, "[a]n injury resulting directly or indirectly from idiopathic *causes* is not compensable." Section 287.020.3(3) (emphasis added). The legislature chose to use the noun "causes" modified by the adjective "idiopathic." It did not use "factor" as it repeatedly used in sections 287.020.3(1) and 287.020.3(2)(a), or "contributor" as Parents' position suggests. Accordingly, the relevant question is *not* whether Employee's morbid obesity was a *factor* in causing his injury or *contributed* to his injury. The relevant question is, instead, whether Employee's morbid obesity was a *cause* of his injury.

"[W]hen the intent of the legislature can be ascertained from the plain and ordinary meaning of the statutory language, the Court is bound to give the statute that construction." *Dickemann v. Costco Wholesale Corp.*, 550 S.W.3d 65, 68 n.5 (Mo. banc 2018). As applicable here, "[w]hen a statutory term is not defined, courts apply the ordinary meaning of the term as found in the dictionary." *Harness v. Southern Copyroll, Inc.*, 291 S.W.3d 299, 304 (Mo.App. 2009). In the form of a verb, "caused" and "causing" are defined as "to serve as a *cause* or

14

occasion of[.]" WEBSTER'S NEW COLLEGIATE DICTIONARY 175 (1980) (emphasis added). To supplement the definition of its verb form, "cause," when used as a noun, is defined as "*something* that brings about an effect or a *result*[.]" *Id.* (emphasis added).

While the "brings about" casual nexus between the "something" and a "result" may run the gamut from extremely tenuous to absolutely conclusive, "'[b]ut for' is an absolute minimum for causation because it is merely causation in fact." **Callahan v. Cardinal Glennon Hosp.**, 863 S.W.2d 852, 862 (Mo. 1993). "Mere logic requires causation in fact." *Id.* at 861. In other words, an idiopathic condition cannot be an "idiopathic cause" of a directly or indirectly resulting injury, unless the idiopathic condition is in fact a cause of the injury. "[T]he 'but for' causation test serves only to exclude items that are not causal in fact." *Id.* at 865. At a minimum, therefore, if an idiopathic condition can not satisfy "but for" causation of the alleged resulting injury, it must be excluded as an "idiopathic cause" under section 287.020.3(3).[3]

As articulated by our Supreme Court, within the factual context in **Callahan**, "[t]he 'but for' causation test provides that the defendant's conduct is a cause of the event if the event would not have occurred 'but for' that conduct." *Id.* at 860-61. Using that formulation within the context of section 287.020.3(3), the "but for" causation test provides that the employee's idiopathic condition is an "idiopathic cause" of the employee's resulting injury if the injury would not have occurred "but for" that idiopathic condition.

Here, as Parents indicate in their point and supporting argument, the relevant experts opined only that Employee's morbid obesity *contributed* to his heat stroke and death. Specifically, as noted by Parents, Dr. Cantrell and Dr. Jardine opined, respectively, that

---

[3] Because Parents failed to meet this minimum causal threshold, as discussed *infra*, we need not consider and do not address whether section 287.020.3(3) requires any closer causal connection between an idiopathic condition and the alleged resulting injury.

15

Employee's morbid obesity "can be considered a *contributing* factor" and "certainly *contributed* to his heat stroke." (Emphasis added.)

Parents, however, direct us to *no* evidence in the record and, having reviewed the whole record, we cannot find *any* evidence in the record that would have supported a finding by the Commission that "but for" Employee's morbid obesity, he would not have suffered the heat stroke that lead to his death. Parents, accordingly, failed to satisfy their burden of production on the application of section 287.020.3(3) such that the issue could have been decided in Parents' favor by the Commission. *See **Kinzenbaw**,* 62 S.W.3d at 53 n.6.

Parents' failure to satisfy their burden of producing evidence that the section 287.020.3(3) idiopathic exception applies resolves their remaining challenge. In their first point, like in their third point, Parents assert a 287.495.1(1) challenge to the award. Parents claim that the Commission "acted without or in excess of its power" because it "improperly add[ed] additional requirements to the statutory idiopathic exception[.]" Parents proceed to identify these allegedly improper, additional requirements as "(1) that the idiopathic condition must be the 'prevailing factor' in causing the injury, (2) that an idiopathic condition must itself cause an uncontrolled change in the employee's behavior, and (3) that an injury must be 'entirely idiopathic in nature.'" Regardless, however, the Commission could not have applied section 287.020.3(3) in *any* manner or respect because Parents failed in the first instance to satisfy their burden of production under that section. Given that failure, Parents' complaints that involve allegations that the Commission misinterpreted section 287.020.3(3) in failing to apply it are necessarily moot.

16

In sum, Parents' failure to satisfy their burden of production under section 287.020.3(3) dooms their section 287.495.1(1) and section 287.495.1(4) challenges. Parents' first, second, and third points are denied.

**<u>Decision</u>**

The Commission's award is affirmed.

GARY W. LYNCH, J. – OPINION AUTHOR

JEFFREY W. BATES, C.J./P.J. – CONCURS

DON E. BURRELL, J. – CONCURS